UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW JOSEPH, JR., as
natural father, next friend and
personal representative of the
Estate of Andrew Joseph, III, deceased,

                                       CASE NO.

               Plaintiff,

vs.

DAVID GEE, in his official capacity as
the Sheriff of Hillsborough County, State of Florida;
JOHN DOES I – X, individually and as deputies or employees
of the Hillsborough County Sheriff's Department;
THE FLORIDA STATE FAIR AUTHORITY, an
instrumentality of the State of Florida; the
HILLSBOROUGH COUNTY SCHOOL BOARD; and the
HILLSBOROUGH COUNTY SCHOOL DISTRICT,

               Defendants,

_____ /

## COMPLAINT

Plaintiff, ANDREW JOSEPH, JR., as the natural father, next friend and personal representative of the Estate of Andrew Joseph, III, by and through his undersigned counsel, hereby sues Defendants, DAVID GEE, in his official capacity as the Sheriff of Hillsborough County, Florida; JOHN DOES I – X, individually and as deputies of the Hillsborough County Sheriff's Department; THE FLORIDA STATE FAIR AUTHORITY, an instrumentality of the State of Florida; the HILLSBOROUGH COUNTY SCHOOL BOARD; and the HILLSBOROUGH COUNTY SCHOOL DISTRICT, and states:

**JURISDICTION & VENUE**

1.       This is an action for damages in excess of $15,000 and for costs and attorneys' fees arising

under section 1983 of Title 42 of the United States Code based upon violations and deprivations

of rights arising under the Fourth and Fourteenth Amendments of the United States Constitution,

together with claims brought under the laws of the State of Florida, for the unjustified arrest and

detention of a nonviolent and non-resistant juvenile; the illegal and improper taking of said

juvenile away from the place of his arrest to a temporary records and detention unit of the

Defendant; and the subsequent negligent release of this juvenile from the temporary detention unit

without notifying his parents and without any oversight or attention to his welfare and well-being

into an area of heavy interstate traffic, forcing the juvenile to attempt to cross the travel lanes of I-

4 and causing him to be hit and killed by an oncoming vehicle;  and otherwise engaging in conduct

that shocks the conscience and is offensive to the community's sense of decency and fair play.

These events occurred on or about February 7, 2014 in Hillsborough County, Florida.

2.       This civil rights causes of action are brought pursuant to 42 U.S.C. §1983, for violations

of the Fourth and Fourteenth Amendments to the United States Constitution, which protect

Americans from unlawful seizures and from the use of excessive or unreasonable force by law

enforcement, cruel and unusual punishment, and loss of life or liberty without due process of law,

respectively.  This Court has jurisdiction to hear § 1983 cases and has ancillary jurisdiction to hear

pendant state Wrongful Death Act claims under Florida Statutes 768.16 – 768.28, as the claims

arise from a common nucleus of operative fact.

3.       Venue is proper in this Court because at all times the actions, policies, customs, practices,

and conduct herein alleged were performed and implemented in Hillsborough County, Florida by

2

the Defendants and their employees under the course and scope of their employment and under color of state and local law.

4.      All conditions precedent including those set forth in §768.28(6) (a), Fla. Stat. (2007), have been performed or satisfied, have occurred, have been waived, or would be futile.

5.      Jury trial is hereby demanded as to all Counts and issues so triable.

## PARTIES & INTERESTED PERSONS

6.      Andrew Joseph, III. ("Andrew"), deceased, was at all time material hereto, a 14-year old honor student attending St. Stephen Catholic school in Hillsborough County, Florida.   Andrew was an honor student with no criminal record.  He was not associated with any gang or other criminally-associated group and was in all respects, to the contrary, a model citizen, talented football player and outstanding student.  Andrew was killed on February 7, 2014 after having been a patron at the Florida State Fairgrounds on "Student Day," from which he was illegally taken into custody by members of the Hillsborough County Sheriff's Department, transported to a location outside of the Fairgrounds, and then released immediately adjacent to Interstate 4 in Hillsborough County without notice to parents or other responsible adults, whereupon Andrew was struck by a passing motorist and killed as more specifically set forth herein below.  At all times, Andrew was a citizen of the United States of America entitled to any and all rights, privileges, protections, and immunities secured by the Constitution and the laws of this Country.

7.      Plaintiff, ANDREW JOSEPH, JR., ("Mr. Joseph") is the natural father of Andrew and is the Personal Representative of the Estate of Andrew Joseph, III.  Mr. Joseph is a resident of Hillsborough County, Florida, and a citizen of the United States of America entitled to any and all

3

rights, privileges, protections, and immunities secured by the Constitution and the laws of this Country.

8.     Defendant, DAVID GEE ("Gee"), is and was at all times material hereto the Sheriff of Hillsborough County, serving in his official capacity as such, and acting under the color of state law. Gee is the director of and presides over the Hillsborough County Sherriff's Office ("HCSO"). HCSO is the law enforcement agency for Hillsborough County.   Gee and HCSO are used interchangeably in this complaint for Gee.  At all times material, Gee, acting in his official capacity as Sheriff of Hillsborough County, is a "person" for purposes of 42 U.S.C. §1983.

9.     Defendants, Defendants JOHN DOES I - X are Sheriff's deputies or other employees, including supervisory officers, dispatchers and other employees or agents of the Hillsborough County Sheriff's Department, whose identities are presently unknown to the Plaintiffs, but known to the HCSO.  These Defendants are sued both in their official capacities and in their individual capacities and will be named specifically as discovery proceeds. The "John Doe" Defendants I - X are under a duty to conduct themselves as officers of the HCSO or employees of the HCSO in a lawful manner so as to preserve the peace of Hillsborough County and to its citizens the rights, privileges, and immunities guaranteed and secured to them by the laws of the United States and of the State of Florida. The "John Doe" Defendants I - X are also under a duty to strictly follow the rules, regulations, policies, procedures, and customs established by the HCSO and/or the laws of the State of Florida.

10.    Defendant, THE FLORIDA STATE FAIR AUTHORITY ("Fair") was at all times relevant to this Complaint, an instrumentality of the State of Florida organized and operating under the Florida Department of Agriculture. The Fair is specifically authorized to sue and to be sued in its own capacity by virtue of Florida Statute Section 616.254.   Section 616.255(2), Fla. Stat.,

4

provides that the Fair shall "...promote the progress of the state and stimulate public interest in the advantages and development of the state by providing facilities for agricultural and industrial exhibitions, public gatherings, cultural activities, and other functions intended to advance the educational, physical, economic, and cultural interests of the public..." The Fair is the owner of approximately 355 acres in Hillsborough County which is bounded on the North by I - 4, on the West by Orient Road, and on the East by U. S. Highway 301 ("the Fairgrounds").

11.     Defendant, HILLSBOROUGH COUNTY SCHOOL BOARD (the "School Board"), is a governmental entity, organized under the Laws of Florida, the governing body of the Hillsborough County School District and responsible for the control, operation, organization, management, and administration of public schools in Hillsborough County, Florida.

12.     Defendant, HILLSBOROUGH COUNTY SCHOOL DISTRICT (the "School District"), is a governmental entity, organized under the Laws of Florida, and is part of the state system of public education and includes all public school, classes, courses of instruction and all services and activities which are under the School District officials' directions and directly related to education in the district.  For purposes of this Complaint, the School Board and the School District are interchangeably referred to herein as the "School Board."

13.     Pursuant to the provision of the Florida Wrongful Death Act, the survivors of Andrew are his natural father, Andrew Joseph, Jr. and Mr. Joseph's wife, Deanna Hardy-Joseph, who is the natural mother of Andrew, each of whom claim individually as survivors through Mr. Joseph, as the personal representative of Andrew's estate.

5

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

### *"Student Day" at the Fairgrounds*

14.      For well over fifty (50) years, students of Hillsborough County schools have been given a day off from school and provided with free admission to an event current known as "Student Day" at the Florida State Fairgrounds.

15.      Precedent to this event, the School District and School Board arrange for the distribution of over 100,000 free tickets to Hillsborough County students attending public schools in Hillsborough County. These schools are under the authority and supervision of the School District and the School Board.

16.      Security for Student Day at the Fairgrounds is provided by the HCSO and is administered by and at the discretion of deputies assigned to duty there. On February 7, 2014, those deputies included JOHN DOES I – X and included both on-duty and off-duty deputies.

17.      Off-duty deputies providing security at the event were paid directly by the Fair or, alternatively, the Fair reimburses HCSO for the services of off-duty deputies providing security services at the Fair.

18.      Students in Hillsborough County, including Andrew Joseph, III, were given tickets to the 2014 Student Day prior to February 7, 2014 by teachers or other employees or agents of the School Board and were encouraged to attend the event.

19.      The students' attendance at the Student Day event is entirely unsupervised by the School Board and prospective student attendees are given no guidance, instruction or parameters by the School Board in terms of behavior or activities while at the event. Students were not required to be accompanied by an adult to be admitted to the event nor are there any other restrictions or conditions for entry, other than possession of the free ticket provided by the School Board.

20.     Upon information and belief, the Student Day event is one that is extremely profitable for both the Fair and the School District, generating well over $1 million dollars in revenue each and every year.

## *History of "Student Day" in Hillsborough County*

21.     Student Day and its sponsorship by the School Board and its involvement with the Fair Authority has had a long and checkered past in Hillsborough County with regard to discriminatory treatment and the targeting by law enforcement of minority students, particularly African-American students, of which all of the Defendants were or should have been well aware as of February 7, 2014 and which should have put the Defendants, HCSO, the School Board/School District and the Fair, on notice that vastly improved organization, policies, security and supervision would be needed at the event in 2014.

22.     Specifically, Student Day has had a continuous history of civil rights abuses and the targeting of African-American students and juveniles for arrest, ejection and unjustified law enforcement intervention since the event's inception and of which the Defendants were well aware prior to the 2014 event.

23.     As early as 1953, Student Day at the Fair was known and advertised to the public in Hillsborough County as "Negro Day" (or worse) and was advertised as the day, "When the colored youth of Florida display their athletic and cultural achievements and fair officials present the award of achievement to outstanding Negro of the year." At that time, this was the only day in which African-American youth were even allowed to attend the Fair on their own. This led to and contributed to a history of arrests and ejections at the Fair in subsequent years by law enforcement and specifically the HCSO that have historically been disproportionality and illegally targeted toward the African-American youth. This conduct continued to the very evening in question.

7

24.     The Fair has historically tolerated, allowed and fostered the discriminatory ejections and arrest policies of the HCSO and has failed to take any steps to rectify or correct the disparate enforcement of ejection and arrest policies at the Fair. The Fair's attitude in this regard is perhaps exemplified by its allowing and encouraging the sale and marketing of racist merchandise at the Fair during trade shows, including merchandise extolling the virtues of the Ku Klux Klan and advocating the hunting of African-Americans.

25.     The School Board and School District were also well aware of this history and the disparate treatment of African-American students at Student Day prior to 2014.

26.     Prior to Student Day in 2014, the Defendants were well aware that there had been a history of ejectments and arrests of African-American students at Student Day that was numerically far in excess of the ejectments and arrests of white students. This trend continued during the Student Day events of 2014. Of all the students ejected from the Fair or arrested on February 7, 2014, for example, all but three (3) were African-American, despite the fact that the event was open and attended by students from schools throughout Hillsborough County and students of all races and ethnicities. In response to this disparity in treatment, rather than examine its own policies and procedures and conduct an internal investigation to determine why HCSO deputies had clearly concentrated their attention and ejections/arrests on African-American students, Sheriff Gee sent an official letter to black civic leaders in Hillsborough County, essentially asking for them to help 'control' or 'police' the African-American community. A copy of this letter is attached as Exhibit A.

### *HCSO at the Fair*

27.     Prior to the initiation of Student Day at the Fair, on-duty deputies assigned to provide security at the Fair were given a 15-20 minute briefing by HCSO supervisors at the nearby

8

Amphitheater, during which deputies were given a map of the Fairgrounds and told to be alert for 'misbehaving,' which was said to include running in the crowded aisles, knocking people down, stealing, fighting, and similar activities – none of which Andrew Joseph, III, was engaged in at the time of his unlawful detention and subjugation. Off duty deputies were apparently not part of the briefing conducted at the Amphitheater.

28.     Deputies attending the Amphitheater briefing were specifically advised on a procedure for the ejection of unruly students or those who were observed to have been in violation of any law. Deputies were instructed on the process of ejection to be used at the event. Deputies were told that they could either trespass the individual and/or to place them under arrest, at their individual discretion.

29.     For juveniles who were arrested, deputies were advised to transport those individuals to the Juvenile Assessment Center in Hillsborough County for processing.

30.     Deputies who were to escort students to the temporary processing center were not instructed to stay with their detainees or supervise their processing, detention or release. Deputies were instructed only to fill out an ejection form, after which the deputies were free to leave the processing center and the student they had escorted there.

31.     For juveniles who were being trespassed or otherwise evicted, deputies were instructed to basically restrict their freedom of movement and to unlawfully 'take' those students to a temporary processing center that had been established by HCSO near the Amphitheater, where HCSO jail personnel had also been assigned to provide assistance. They were then forcibly removed from the processing center to a HCSO vehicle and transported a mile or two away to be dumped out close to the interstate whereby Mr. and Mrs. Joseph's only son, 14 year old Andrew Joseph, III, was killed crossing Interstate I-4 trying to get back to the Fairgrounds to meet his ride back home.

Once the student detainees had been transported off the Fairgrounds, the vans returned to the Fairgrounds.

32.     Upon information and belief, at no time were the past policies and excesses of law enforcement and the HCSO with respect to the treatment of minority students at the event discussed, nor were any warnings given, or measures taken to avoid a repeat of such disparate treatment of minority students at the 2014 event.

33.     No instructions, suggestions or advice was provided to any of the deputies at the Amphitheater briefing to make any attempt to call, notify or otherwise contact the parents or any other responsible adult when student detainees were initially detained; transported to the processing center; or when these students were released from the processing center. The HCSO official public announcement concerning the facts stated in this paragraph was that, "We are not baby-sitters."

34.     Upon information and belief, many students – African-Americans – were also taken into custody by HCSO inside the Fairgrounds and simply transported to a Gate or location outside the Fairgrounds for ejection without being processed at the temporary center. As with those students taken to the processing center, no attempt or effort whatsoever was made by deputies to contact the parents of these students or to notify any responsible adult that the children had been ejected and taken against their will to some location outside of the Fairgrounds where they had been dropped off by their parents or others.

35.     On the night of February 7. 2014, the temporary processing center was understaffed and unable to efficiently process the student detainees brought there by deputies from the event. At the center, there was great confusion as to who was in charge on behalf of the HCSO, which students were being arrested or merely detained and ejected, which students required transport to

10

the Juvenile Assessment Center, and who was responsible for handling and processing the students who were being brought to the processing center. Throughout the evening, deputies were dropping off student detainees by merely filling out the ejection forms and leaving their detainee there at the facility to be processed and dealt with by the inadequate staff on duty there. Upon information and belief, only three detention deputies were given the responsibility of dealing with numerous juveniles at the facility, when far more staff was needed to safely monitor and process the large numbers of student detainees and arrestees brought to the center. Additionally, many ejected African-American students were simply taken into custody and transported outside the Fairgrounds and warned not to return.

36.     According to information and belief, the HCSO provided no supervisors to staff the temporary detention center and the only HCSO supervisory personnel present at the center were those passing through on a temporary basis while dropping of detainees. The lack of supervisory personnel at the processing center added to the general confusion and disorganization that plagued the center on the night of February 7, 2014. Additionally, deputies were apparently allowed to simply deposit ejected students outside the premises without being required to make any reports or records regarding their actions.

37.     Although HCSO was, or should have been aware that the detention center was understaffed and in general chaos and in need of additional HCSO personnel and especially supervisory personnel on February 7, 2014, HCSO did nothing to alleviate the crowded and unorganized conditions at the processing center, which continued throughout the night of February 7, 2014. Instead, the conditions at the processing center were allowed to persist. Additionally, HCSO supervisors knew or should have known that in response to the crowding and chaos at the processing center, many deputies were simply disregarding the center altogether, and were

11

transporting their detainees outside the Fairgrounds to be dropped off with no record, paperwork, or notice to their families.

*Andrew*

38.     Like thousands of other Hillsborough County students, Andrew was provided with a ticket to the 2014 Student Day by the School Board and attended at the Fairgrounds with the knowledge and permission of his parents on February 7, 2014.

39.     During the early evening hours of February 7, 2014, at approximately 8:00 p.m., Andrew Joseph, III, was arrested and placed in custody by HCSO deputies for alleged 'disorderly conduct' without cause or justification and was, in fact, a pretest to justify an unlawful arrest and detention.

40.     At the time of his arrest, Andrew was not disorderly, was in violation of no law, and was not smoking or drinking alcohol or using any other intoxicant. He was not engaged in any unlawful or wrongful activity, nor was he engaged in any activity which would permit him to be identified as a trespasser, nor did he ever receive a trespass after warning. He was, in fact, a lawful invitee on the premises.   Notwithstanding his lack of culpability, Andrew was racially targeted by unknown members of the HCSO who unlawfully restricted his freedom of movement until the time he was dumped onto the street by the HCSO a mile or two away from the Fairgrounds.

41.     At no time was any attempt made by deputies to contact Andrew's parents or notify them that their son had been taken into custody.

42.     No attempt was made by the arresting officers to notify Andrew's parents or any other responsible adult that Andrew had been taken into custody or that deputies had transported Andrew away from the Fairgrounds where his parents had taken him earlier that evening.

43.     After being unlawfully and wrongfully detained and coerced off the Fairgrounds in the HCSO van and driven a mile or two away from the Fairgrounds, he was not provided or offered

transportation back to the Fair by HCSO and was  given no assistance or supervision whatsoever upon his release and was just simply dumped.

44.     After his release near the adjacent to Interstate 4, Andrew attempted to return to the Fairgrounds from which he had been taken by crossing northbound across the westbound lanes of Interstate 4 between U.S. Highway 301 and Orient Road, when he was struck and killed by a passing motorist.

45.     The toxicology report subsequently conducted by HCSO on Andrew showed that Andrew was completely free of any alcohol, drugs or intoxicants.

46.     Mr. Joseph arrived at the Fairgrounds in an abortive and frantic effort to locate his son only to learn hours later that his son, Andrew, was in the morgue at the State Medical Examiner's office deceased having been crushed by a vehicle as he was trying to cross the interstate.

## COUNT I

### (State Law Wrongful death as to Defendants John Doe I – X)

47.     At all times material hereto, Defendants John Doe I – X had a duty to Andrew to exercise due care for his safety and well-being both during the period of detention and in the process of release.

48.     On February 7, 2014, Defendants breached that duty and were negligent in ways that include, but are not necessarily limited to the following:

a)   Taking Andrew into custody and ejecting him from the Fair without proper cause;

b)   Transporting Andrew against his will to a point outside the Fairgrounds;

c)   Failing or refusing to take even minimal steps to notify Andrew's parents or any other responsible adult that Andrew had been taken into custody or that Andrew had been ejected and transported outside the Fairgrounds;

13

d) Releasing Andrew outside the Fairgrounds and refusing to allow him to reenter without cause or reason;

e) Failing to take any steps to notify Andrew's parents that he was being released outside the Fairgrounds and failing and refusing to take any steps to notify his parents or other responsible adult that Andrew was being released outside the Fairgrounds;

f) Transporting and releasing Andrew in an area adjacent to a heavily travelled interstate without taking any steps to protect him from traffic or from entering the traffic lanes of the adjacent interstate;

g) Failing to take any steps whatsoever to ensure that Andrew was safe and that he was not subjected to undue risk of harm.

49.     As the direct and proximate result of Defendants' breach of their duty, Andrew was killed shortly after his release from custody near the spot to which he had been transported.

50.     As the result of Andrew's death, his estate and survivors are entitled to recover damages as set forth in the Florida Wrongful Death Act.

WHEREFORE, Plaintiff demands damages from Defendants and trial by jury.

## COUNT II
### (State Law Wrongful Death as to Defendant, HCSO/GEE)

51.     At all times material, Defendants John Doe 1 – X were deputies or employees of HCSO and were working within the course and scope of their employment for the use and benefit of the HCSO.

52.     At all times material, HCSO is responsible for the negligent acts of its agents, servants and employees taken within the course and scope of their employment.

14

53.     On February 7, 2014, the deputies, agents, servants and employees of the HCSO were negligent with respect to their treatment of Andrew Joseph, III, as set forth herein.

54.     As the direct and proximate result of Defendants' breach of their duty, for which HCSO bears responsibility, Andrew was killed shortly after his release from custody near the spot to which he had been transported.

55.     As the result of Andrew's death, his estate and survivors are entitled to recover damages as set forth in the Florida Wrongful Death Act.

WHEREFORE, Plaintiff demands damages from Defendant, HCSO, and trial by jury.


## COUNT III

### (State Law Wrongful Death as to the School Board and School District)

56.     At all times material, the Defendants, School Board and/or School District, initiated, arranged, sponsored and conducted the Student Day affairs at the Fairgrounds on February 7, 2014.

57.     On February 7, 2014 and during the days preceding February 7, 2014, Defendants had a duty to anticipate reasonably foreseeable dangers and to take precautions protecting the children in its care and attending sponsored events such as Student Day from such dangers. Defendants had a duty to take such steps as would make Student Day safe for the students to whom the defendants issued tickets and who the Defendants encouraged and expected to attend the festivities and to arrange for adequate supervision of the students attending the event.

58.     Based on the prior Student Day events held in previous years, the Defendants knew, or should have known, that security and safety of the students at the event were of paramount importance and that previous events had experienced serious difficulties in controlling the behavior of certain unruly students and had difficulty maintaining safety of the students. As such,

15

it was reasonably foreseeable to the Defendants that accidents or injuries to students could occur if proper and adequate safeguards were not adopted and put into place prior to February 7, 2014.

59.     At all times material, deputies of the HCSO and other providers of security at the Student Day event on February 7, 2014, were acting as the agents, servants, employees or representatives of the School Board and were acting on the School Board's behalf and for the benefit of the School Board, as the organizers and sponsors of the Student Day events.

60.     Defendants, by and through their employees, agents, servants or representatives, breached their duty and were negligent in ways that include, but are not necessarily limited to the following:

a) Failing to provide for adequate numbers of security and other supervisory personnel at the Fairgrounds, including HCSO personnel and School Board employees;

b) Failing to insist on proper procedures and guidelines to be implemented and utilized at the Fair for the identification of juveniles for ejection and the criteria for ejection from the Fair;

c) Failing to take measures to control the numbers of students in attendance at the Fair at any one time;

d) Failing to implement and utilize a system of parental notification upon the ejection of any student from the Fair;

e) Failing to provide for safe transportation of students to and from the Fair;

f) Failure to provide adult supervision; and

g) Failure to coordinate and work with the Fair and HCSO to ensure that proper procedures and adequate numbers of personnel were in place to safely monitor and deal with the numbers of students to whom the Defendants gave tickets and encouraged to attend the Fair.

16

61.     As the direct and proximate result of the negligence of these Defendants, Andrew Joseph, III was killed shortly after his being taken into custody and then released outside the Fair as set forth herein.

62.     As the result of Andrew's death, his estate and survivors are entitled to recover damages as set forth in the Florida Wrongful Death Act.

WHEREFORE, Plaintiff demands damages from Defendants, School Board and School District, and trial by jury.

**COUNT IV**

**(State Law Wrongful Death as to the Fair Authority)**

63.     At all times material, the Defendant, Fair Authority, was in control of the premises known as the Florida State Fairgrounds.

64.     This Defendant had a duty to take such reasonable steps as were necessary for the safety and protection of invitees onto the property, such as Andrew Joseph, III.

65.     Additionally, this Defendant, together with Defendants, the School Board and/or School District, initiated, arranged, sponsored and conducted the Student Day affairs at the Fairgrounds on February 7, 2014. As such, the HCSO deputies and other security personnel at the event were acting as the agents, servants, employees or representatives of the Fair and were acting on the Fair's behalf and for the benefit of the Fair, as the property owner of the Fairgrounds and as an organizer and sponsor of the Student Day events

66.     Based on the prior Student Day events held in previous years, the Defendant knew, or should have known, that security and safety of the students at the event were of paramount importance and that previous events had experienced serious difficulties in controlling the behavior of certain unruly students and had difficulty maintaining safety of the students. As such,

it was reasonably foreseeable to this Defendant that accidents or injuries to students could occur if proper and adequate safeguards were not adopted and put into place prior to February 7, 2014.

67.     Defendant, the Fair Authority, by and through their employees, agents, servants or representatives, breached their duty and were negligent in ways that include, but are not necessarily limited to the following:

a) Failing to provide for adequate numbers of security personnel at the Fairgrounds, including HCSO personnel;

b) Failing to insist on proper procedures and guidelines to be implemented and utilized at the Fair for the identification of juveniles for ejection and the criteria for ejection from the Fair;

c) Failing to take measures to control the numbers of students in attendance at the Fair at any one time;

d) Failing to provide for aisle ways and a midway of adequate width to prevent crowding and to deter unruly behavior;

e) Failure to have security or surveillance systems in place that would have assisted security personnel in identifying patrons who were acting in an unruly manner and should be ejected and, more importantly, to prevent innocent students such as Andrew, from being improperly and unfairly singled out or targeted for improper ejection;

f) Failing to implement and utilize a system of parental notification upon the ejection of any student from the Fair;

g) Failing to provide for safe transportation of students to and from the Fair;

h) Failure to provide adult supervision; and

     i) Failure to coordinate and work with the HCSO and the School Board and School District to ensure that proper procedures and adequate numbers of personnel were in place to safely monitor and deal with the numbers of students to whom the Defendants gave tickets and encouraged to attend the Fair.

68.     As the direct and proximate result of the negligence of these Defendants, Andrew Joseph, III was killed shortly after his being taken into custody and then released outside the Fair as set forth herein.

69.     As the result of Andrew's death, his estate and survivors are entitled to recover damages as set forth in the Florida Wrongful Death Act.

WHEREFORE, Plaintiff demands damages from Defendant, the Fair Authority, and trial by jury.


### COUNT V

### (False Arrest and Detention Pursuant to 42 U.S.C. § 1983)

### (Defendant John Does I - X)

70.     A warrantless arrest without probable cause violates the Fourth and Fourteenth Amendment's prohibition against unreasonable searches and seizures. *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007); *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990); *Herren v. Bowyer*, 850 F.2d 1543, 1547 (11th Cir. 1988).

71.     As of February 7, 2014, it was clearly established that it was a violation of the United States Constitution for a law enforcement officer to make an arrest without even arguable probable cause. *Crosby v. Monroe County*, 394 F.3d 1328, 1332-33 (11th Cir. 2004).

72.     On February 7, 2014, Defendant John Does I – X George violated Andrew Joseph, III's constitutional rights by unlawfully detaining, taking into custody, arresting and transporting Andrew for disorderly conduct without probable cause and without even arguable probable cause.

73.     Defendant John Does I – X acted under color of state law at all relevant times.

74.     As the direct and proximate result of the actions of Defendants, John Does I – X, Andrew, a juvenile, was killed shortly after his release as specifically set forth herein.

75.     As the result of the death of Andrew, his estate and survivors have suffered damages for which they are entitled to recovery pursuant to the provisions of 42 U.S.C. § 1983.

        WHEREFORE, Plaintiff demands recovery from these Defendants of all damages, costs, attorney's fees and any further relief that the Court may deem appropriate.


## COUNT VI

### (Violation of 42 U.S.C. § 1983 Violation of Duty to Children)

### (Defendant John Does I - X)

76.     At all times material, Andrew Joseph, III, was unlawfully taken into custody and transported off Fairgrounds property by Defendants, John Doe 1-X.

77.     After being taken into custody and transported to another location off Fairgrounds property, Defendants abandoned Andrew without notifying his parents and without taking any further action and without concern for Andrew's welfare or well-being.

78.     Andrew was placed in an unreasonable position of danger, in which he would not otherwise have found himself, solely through the actions of the Defendants during the Defendants' performance of their official duties.

79.     Defendants had a duty to provide aid to children, such as Andrew, who were endangered through the Defendants' performance of their official duties.

80.     The failure of the Defendants to provide any aid to Andrew whatsoever and the failure to even notify Andrew's parents after taking him into custody and transporting him to a different location constitutes an unjustified and arbitrary refusal of the Defendants to comply with their duty to lend aid to children endangered by the performance of their official duties, which is a violation of Andrew's right to due process and constitutes gross negligence and/or reckless disregard for the safety of Andrew.

81.     As the direct and proximate result of the actions of Defendants, John Does I – X, Andrew, a juvenile, was killed shortly after his release as specifically set forth herein.

82.     As the result of the death of Andrew, his estate and survivors have suffered damages for which they are entitled to recovery pursuant to the provisions of 42 U.S.C. § 1983.

        WHEREFORE, Plaintiff demands recovery from these Defendants of all damages, costs, attorney's fees and any further relief that the Court may deem appropriate.


                                    **COUNT VII**

                **(Violation of 42 U.S.C. § 1983 Custom, Practice & Policy )**

                            **(Defendant Gee/HCSO)**

83.     At all times material hereto, Defendant Gee, as the Sheriff of Hillsborough County, was responsible for the safety, and security of the children taken into custody by the HCSO at the Student Day event at the Fair on February 7, 2014.

84.     At the time Andrew was taken into custody, Gee was aware that the HCSO had been plagued by a history and allegations of discriminatory treatment of African-American students at

the Student Day events at the Fair and that African-American students had been disproportionally targeted by HCSO personnel for arrest and ejection at the Fair going back to the event's inception in the mid-1900's.

85.    Instead of taking steps to identify the cause of the discriminatory treatment of African-American students at the Student Day events at the Fair. Gee elected to place blame on the African-American community, asking for their help in 'controlling' their youth at the Fair.  In so doing, Gee made the deliberate choice not to take any remedial action insofar as his deputies and their policies of ejectment and arrest at the Fair.  Instead, Gee made the deliberate and conscious decision to continue the previous policies of the HCSO, which Gee knew or should have known were discriminatory, unfair and ineffective.

86.    Additionally, Gee knew or should have known, that the staff and procedures in place at the temporary processing facility were inadequate for the processing of the large numbers of students, African-American students, brought to the facility by deputies.  As a result, Gee should have known that deputies were bypassing the processing center altogether, and were simply ejecting students from the Fairgrounds by transporting them to an outside location and forcing them out to make their way home as best they could.  Gee also should have known or anticipated, that parents of these students were not being notified and that this had created an unreasonably dangerous situation which Gee had a duty to correct.

87.    As the direct and proximate result of Gee's deliberate indifference and the HCSO custom, practice and policy of implementing, continuing and perpetuating the long-standing practice of targeting African-American students for ejection and arrest at the Fair, Andrew Joseph, III, a 14-year old private school honor student with no criminal background whatsoever, was improperly

detained, taken into custody and transported off the Fairgrounds property to a location in the immediate vicinity of Interstate 4.

88.     As the direct and proximate result of Gee's deliberate indifference and the HCSO custom, practice and policy of implementing, continuing and perpetuating the long-standing practice of not having any policy of contacting the parents of juveniles who had been ejected or transported from the Fair, Andrew Joseph, III, was taken away from the Fairgrounds without his parents knowledge or consent.

89.     As the direct and proximate cause of the HCSO customs, practices and policies, Andrew Joseph was transported and released in a location and under circumstances that lead to his death and which would not have occurred but for the actions of the HCSO in implementing these customs, practices and policies.

90.     As the result of the death of Andrew, his estate and survivors have suffered damages for which they are entitled to recovery pursuant to the provisions of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff demands recovery from these Defendants of all damages, costs, attorney's fees and any further relief that the Court may deem appropriate.

(Rest of Page Left Intentionally Blank)

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues herein.

Respectfully submitted this 3rd day of February, 2016.

Respectfully submitted,

_____
Barry A. Cohen, Esq.
bcohen@tampalawfirm.com

_____
Kevin J. Darken, Esq.
kdarken@tampalawfirm.com

_____
Michael W. Gaines, Esq.
mgaines@tampalawfirm.com
BARRY A. COHEN, P.A.
201 E. Kennedy Blvd.
Suite 1950
Tampa, FL 33602
Phone (813) 225-1655
Fax (813) 225-1921
Attorneys for Plaintiffs