UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW JOSEPH, JR., as
Natural father, next friend and
personal representative of the
Estate of Andrew Joseph, III, deceased

        Plaintiff,

v.

DAVID GEE, in his official capacity as
The Sheriff of Hillsborough County, State of
Florida; JOHN DOES I – X, individually and
as deputies or employees of the Hillsborough
County Sheriff's Department; THE FLORIDA
STATE FAIR AUTHORITY, an
instrumentality of the State of Florida; the
HILLSBOROUGH COUNTY SCHOOL
BOARD; and the HILLSBOROUGH
COUNTY SCHOOL DISTRICT,

        Defendants.
_____/

Case No. 8:16cv274T35TBM

### DEFENDANT THE SCHOOL BOARD OF HILLSBOROUGH COUNTY'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant The School Board of Hillsborough County ("School Board") moves, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint filed by the plaintiff Andrew Joseph, Jr., as natural father, next friend and personal representative of the Estate of Andrew Joseph, III, deceased ("Plaintiff"), because it fails to state a claim upon which relief can be granted against the School Board for wrongful death.

The School Board filed a motion to dismiss Plaintiff's first complaint, which brought the same claim against the School Board. Plaintiff requested the School Board's stipulation to file the Amended Complaint, in lieu of proceeding on the School Board's motion to dismiss. The

School Board agreed. Disappointingly, the Amended Complaint fails to address the either the substantive or procedural defects, and, rather, merely added or amended allegations related to other defendants, which ultimately serve only to further attenuate the School Board from the events at issue both factually and legally. This squandered amendment opportunity as to the School Board, underscores what the alleged facts of the case already demonstrated to be true; the School Board had nothing to do with either the decedent or the tragic circumstances surrounding his death. As a result, Plaintiff can state no viable claim against the School Board and the Amended Complaint should now be dismissed with prejudice.

## BACKGROUND[1]

Plaintiff's claims against the three (3) defendants in this case arise out of the death of Andrew Joseph, III ("Joseph"). Joseph was a fourteen (14) year old student that attended private school in Hillsborough County, Florida. (Doc. 28 at ¶ 6). On February 7, 2014, Joseph attended an event known as "Student Day" during the annual State Fair at the Florida State Fairgrounds (the "Fairgrounds"). Id. At approximately 8:00 p.m. that night, Plaintiff claims that Joseph was detained and placed in custody by deputies from the Hillsborough County Sheriff's Office ("HCSO") at the Fairgrounds for disorderly conduct. Id. at ¶¶ 6, 38. Following Joseph's detention, he was ejected from the State Fair and taken by the HCSO deputies to Gate Four of the Fairgrounds, which is alleged to be an area "adjacent to Interstate 4." Id. at ¶ 42.

After ejecting Joseph from the State Fair, an HCSO deputy in a patrol car allegedly drove up to Joseph and his friend and told the boys that they could not stay where they were. Id. at ¶

---

[1] Note, the background facts discussed in this section are taken from the allegations found in the Amended Complaint, which are accepted as true for the limited purposes of the present Motion. The recitation of the facts herein does not constitute the School Board's adoption of the stated facts as accurate or belief that the allegations as stated represent the actual events of February 7, 2014.

46. Allegedly, the deputy refused to allow the boys back into the State Fair or give them a ride to the entrance area on the Highway 301 side of the Fairgrounds. Instead, the deputy told Joseph and his companion that in order to reach the entrance area, they had to exit the Fairgrounds, cross over Interstate 4, and then walk until they reached Highway 301. Id. at ¶¶ 44–49. After receiving those instructions, Joseph and his friend exited the Fairgrounds along the route pointed out to them by the deputy. Id. at ¶ 50. During their journey, Joseph crossed over Interstate 4 to the west side of the travel lanes and then, inexplicably, attempted to cross back over Interstate 4, where he was struck and killed by a passing motorist. Id.

As a result of Joseph's death, Plaintiff is suing David Gee, in his official capacity as Sheriff of Hillsborough County, the School Board, and the Florida State Fair Authority for wrongful death.[2] Plaintiff's Amended Complaint, however, must be dismissed because it fails to allege sufficient ultimate facts to state a wrongful death cause of action against the School Board under any conceivable theory of negligence liability.

As a threshold matter, Plaintiff appears to again improperly combine two (2) separate and alternative theories of negligence liability within the same wrongful death count against the School Board. First, it appears that Plaintiff is claiming that the School Board's direct negligence was the cause of Joseph's death. (Doc. 28 at ¶¶ 60–62). The School Board, however, cannot be directly liable for negligence under the facts presented by the Amended Complaint because it owed no legal duty to Joseph, a private school student that was injured miles away from the Fairgrounds after attending the State Fair on a Friday evening.

Second, although the pleading is far from clear, due to the vague use of the term "Defendants" throughout Count II, Plaintiff also appears to allege that the School Board is vicariously liable for the actions of the HCSO deputies in detaining Joseph and ejecting him

---

[2] Plaintiff additionally alleges a violation of 42 U.S.C. § 1983 against defendant David Gee, in his official capacity.

from the Fairgrounds and/or instructing him to cross the Interstate. See id. at ¶ 66 (alleging that "deputies of the HCSO and other providers of security at the Student Day event on February 7, 2014, were acting as the agents, servants, employees or representatives of the School Board and were acting on the School Board's behalf and for the benefit of the School Board, as the organizers and sponsors of the Student Day events."). To the extent that Plaintiff is pursuing a vicarious liability claim against the School Board based upon any purportedly negligent actions or omissions of the HCSO deputies that were providing security at the Fairgrounds, however, the allegations in the Amended Complaint are insufficient to establish an agency relationship between the School Board and the HCSO. The allegations in the complaint, rather, establish just the opposite. Indeed, the School Board previously raised Plaintiff's failure to establish the requisite agency relationship between the two (2) entities in its motion to dismiss the original complaint in this action. Plaintiff, however, failed to correct this deficiency in its pleading, which leads to the conclusion that Plaintiff does not have the ability to plead the necessary facts to establish a relationship that would impose negligence liability upon the School Board for the actions of the HCSO deputies.

## LEGAL ARGUMENT

### I.      THE REQUIRED PLEADING STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell A. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). "As such, a plaintiff is required to allege 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Rushing v. Wells Fargo Bank, N.A., 752 F. Supp. 2d 1254, 1258 (M.D. Fla. 2010) (quoting

Twombly, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

II. **PLAINTIFF'S DIRECT NEGLIGENCE CLAIM AGAINST THE SCHOOL BOARD FAILS BECAUSE THE SCHOOL BOARD OWED NO DUTY TO JOSEPH ON THE EVENING OF FEBRUARY 7, 2014.**

In order to recover, Plaintiff must prove that the School Board's negligence caused Joseph's death. Williams v. Bay Hosp. Inc., 471 So. 2d 626, 629 (Fla. 1st DCA 1985) ("[I]t is fundamental that the wrongful death statute is not applicable except in wrongful death actions, i.e., where it is claimed that the death of a person was 'caused by the wrongful act, negligence, [or] default. . .' of another."). To state a cause of action in negligence, Plaintiff must allege ultimate facts that establish a relationship between Joseph and the School Board, and which give rise to a legal duty owed by the School Board to protect Joseph from the injury of which Plaintiff complains. Mather v. Northcutt, 598 So. 2d 101, 102 (Fla. 2d DCA 1992); see also Angell v. F. Avanzini Lumber Co., 363 So. 2d 571, 572 (Fla. 2d DCA 1978) ("No one disputes that in order for [plaintiff's common law negligence claim] to withstand a motion to dismiss, it must contain three elements: **1.) existence of a duty on the part of defendant to protect plaintiff from injury**, 2.) failure of the defendant to perform this duty, and 3.) injury to the plaintiff resulting from such failure.") (emphasis added).

The duty element of negligence is "a minimal threshold **legal** requirement for opening the courthouse doors." McCain v. Fla. Power Corp., 593 So. 2d 500, 502 (Fla.1992) (emphasis in original). Further, it is well-established that questions regarding duty of care are questions of law for the Court to decide. See Williams v. Davis, 974 So. 2d 1052, 1057 n. 2 (Fla. 2007) (noting that establishing the existence of a duty under Florida negligence law is a question of law

5

for the court rather than a jury). While Plaintiff, in a conclusory fashion, states the existence of a duty on the part of the School Board to "take such steps as were reasonably necessary to ensure that students attending [Student Day] would not be at risk of unnecessary danger by virtue of their attendance at Student Day" (Doc. 28 at ¶ 62), Plaintiff does not allege an underlying factual basis to support the existence of this duty under the circumstances of this case.

Because Plaintiff has not set forth sufficient ultimate facts to establish a relationship between the School Board and Joseph that would give rise to a legal duty on the part of the School Board, much less a breach of that duty that proximately caused Joseph's death, the wrongful death claim against the School Board must be dismissed. See Lapidus v. NCL Am. LLC, 12-21183-CIV, 2012 WL 2193055, at *3 (S.D. Fla. June 14, 2012) ("[B]ecause Plaintiff fails to plead facts to support a legal duty, breach of the duty, and causation, his negligence claims must be dismissed.").

### A. The School Board Owed No Duty Of Supervision To Joseph, A Private School Student, During This Non-School Related Activity Occurring Off-Campus And After School Hours.

As a general rule, "[a] public school, at least through the high school level, undoubtedly owes a general duty of supervision to the students placed within its care." Kazanjian v. Sch. Bd. of Palm Beach County, 967 So. 2d 259, 264 (Fla. 4th DCA 2007) (quoting Rupp v. Bryant, 417 So. 2d 658, 666 (Fla. 1982)). "This duty is based on the school's standing partially in place of the student's parents." Id. "Mandatory schooling has forced parents into relying on teachers to protect children during school activity." Id. "While Florida recognizes a general duty of supervision, a school has no duty to supervise 'all movements of all pupils all the time.'" Id.

However, to the extent that Plaintiff is arguing that the School Board owed a duty to supervise Joseph, a private school student, off of school property at the State Fair, that argument

6

is quickly dismissed by review of both statute and case law. See §§ 1003.02 and 1003.31(2), Florida Statutes (providing that the School Board is statutorily charged with the operation and control of **public** K–12 education within the school district, however, "**[t]he duty of supervision shall not extend to anyone other than students attending school and students authorized to participate in school-sponsored activities.**"); Matallana v. Sch. Bd. of Miami–Dade County, 838 So. 2d 1191, 1192 (Fla. 3d DCA 2003) (holding that the school had no duty to supervise student at the time of a fatal shooting incident which occurred off school premises and was unrelated to any school activity); Gross v. Family Servs. Agency, Inc., 716 So. 2d 337, 339 (Fla. 4th DCA 1998) (stating that schools generally have not been held to have a duty of supervision when injuries occurred off-campus while students have been involved in non-school related activities).

As a threshold matter, the Amended Complaint alleges that Joseph attended a private school. (Doc. 28, ¶ 6). As such, he is not a "student" that is owed a duty of supervision under section 1003.31(2), Florida Statutes. But even if Joseph was a student enrolled in a Hillsborough County public school, Florida law is settled that a school board has no duty to its students when they are engaged in an off-campus activity held after school hours that is neither school-sponsored nor related to a school activity. In the leading case of Concepcion v. Archdiocese of Miami, 693 So. 2d 1103 (Fla. 3d DCA 1997), a student was assaulted by another student from a neighboring school. The incident occurred on a public sidewalk outside the gates of both schools. Id. at 1104. The court held that the school owed no duty to supervise off-campus, non-school-related activities occurring after school hours. Id. at 1105. As the court stressed, "**[a]t some point, we believe that a school's obligation of reasonable supervision must come to an end and the parent or guardian's duty of supervision must resume. That logical point, we**

**think, should be when the student leaves the school's premises during non-school hours and is no longer involved in school-related activities**." Id. (emphasis added).

Other cases are in accord. For example, in <u>Kazanjian v. School Board of Palm Beach County</u>, the parents of a student killed in a car accident after she skipped school claimed that the school should have prevented the student from leaving campus. 967 So. 2d 259, 264 (Fla. 4th DCA 2007). The court affirmed summary judgment in the school board's favor, holding that the school owed no duty to supervise the student off school property. Id. (collecting cases). Likewise, in <u>Archbishop Coleman F. Carroll High Sch., Inc. v. Maynoldi</u>, the court found that, even though the school's administration discussed over the school public address system an upcoming end-of-year party at a student's home and the school principal and a school employee made an appearance at the party, the party was not "school sponsored" or a "school related" activity. 30 So. 3d 533, 540–541 (Fla. 3d DCA 2010). As a result, the court held that the school did not have any tort liability for a student that attended the party's fatal decision to get behind the wheel after consuming alcohol at the party. Id. at 540, 545.

  **B. Even Assuming The School Board Owed A Duty To A Private School Student, The Amended Complaint Fails To Establish That The State Fair Is A School-Sponsored Or School-Related Activity.**

What is deemed to be school sponsored from a standpoint of duty is determined as a matter of law, Plaintiff cannot just label Student Day as "school sponsored" in order to impose a duty on the School Board. Under controlling law, two primary standards have been articulated that establish appropriate legal standards for a school's legal duties to students engaged in off-premises activities: a school's on-premises duty of supervision may continue when an off-premises activity is "school sponsored" or "school related." <u>Maynoldi</u>, 30 So. 3d at 540. "The 'sponsor' of an event, according to any dictionary and common usage, is one who pays for it or

8

takes responsibility for it." Id. For example, "[h]igh schools may be said to 'sponsor' a prom away from the school premises, but the event is on official school calendars; faculty and staff ordinarily attend and chaperone." Id. "The broader standard, 'school related,' requires some connection to the school's academic and extracurricular programs." Id. A common "school related" event is a school athletic team's participation in a scheduled competition at another location. Id. Likewise, the off-premises meeting of a school club could be considered "school related" sufficient to trigger a legal duty to a student. Id. However, in order to be considered "school related," it must be shown that the school has reserved to itself the authority to control the activities that take place at the off-premises event. Id.

In this case, the alleged facts do not satisfy the narrower "school sponsored" test, as Plaintiff does not allege sufficient facts to support that the School Board either (i) paid for the Student Day event at the State Fair, or (ii) took responsibility for it. Indeed, the alleged facts establish the exact opposite. As alleged in the Complaint, the Fair Authority is the owner of the Fairgrounds where the State Fair is held and pays directly for the security, which is provided by off-duty deputies from the HCSO. (Doc. 28 at ¶¶ 10, 16). Further, unlike a high school prom, which is typically chaperoned by faculty and staff with attendance limited exclusively to students, it is not alleged that Student Day was attended by or chaperoned by School Board staff or employees or that the School Board had any degree of control over who could attend the event, which is open to and regularly attended by the general public.

Moreover, the Amended Complaint fails to allege the requisite facts to meet even the broader "school related" test. It is not alleged that any academic or extracurricular programs took place at the State Fair on Student Day, that the School Board mandated attendance at the State Fair for Student Day, that the School Board provided transportation to or from the State

9

Fair on Student Day, or that the School Board in any manner reserved to itself the authority to control the activities that took place at the State Fair on Student Day. Further, it is not alleged that Hillsborough County school administrators or faculty were in attendance at the fair or that they had any authority to control the activities that occurred there. It is not even alleged that attendance at the State Fair on Student Day is exclusively limited to Hillsborough County public school students, or that the general public is somehow barred from attendance on that day (clearly, as exemplified by Joseph's attendance, it was not).

Plaintiff's Amended Complaint appears to attempt a half-hearted effort to establish that Student Day was "school related" by making various conclusory allegations in Paragraph 61 regarding the School Board's alleged role in arranging for and promoting Student Day, making vague claims regarding unspecified "arrangements" made with the Fair Authority to conduct Student Day and the provision of unspecified "activities" at the event. However, these conclusory allegations hardly make Student Day at the State Fair, an unsupervised event open to the general public, the equivalent of a school club meeting, a school soccer match, a prom, a field trip, or any other event that has been found under the controlling case law to meet the "school sponsored" or "school related" tests.

Further, to the extent Plaintiff alleges that the School Board distributed promotional materials and tickets **to its own students** during school hours, Florida courts have made clear that merely acknowledging or discussing an event that is taking place after school is insufficient to make it "school related." Maynoldi, 30 So. 3d at 540–541, 545. In any event, it is unclear how these allegations are relevant at all. Given that Joseph was not a Hillsborough County student attending a public school in Hillsborough County, the School Board's distribution of tickets to students enrolled in public schools or the alleged promotion of the event during school

10

hours cannot be causally connected to Joseph's late evening attendance of the Student Day event at the State Fair.

In sum, it is absurd to think that the School Board can exercise control over any of the activities at the State Fair, an annual event that is open to the general public, any more than it can exercise control or authority over what happens on any given day at Busch Gardens or Disney World. The general promotion of a day that is traditionally open to students, who may attend with their parents' permission and, hopefully, supervision, could never give rise to the same duty of care on the School Board as a high school football game or a school-sponsored field trip. Because the Amended Complaint fails to establish that Student Day at the State Fair was a "school sponsored" or "school related" activity, the School Board cannot face tort liability for any alleged failure to ensure that individuals attending State Fair on February 7, 2014 were not "at risk of unnecessary danger by virtue of their attendance at Student Day."

### C. Even Assuming That Joseph Was A Hillsborough County Student Attending A School-Related Or School-Sponsored Activity, The Alleged Harm Occurred Outside Of The Boundaries Of The Venue, Over Which The School Board Could Never Have a Duty.

Finally, even assuming that it could be established that the School Board had a duty to supervise a teenager that was not even enrolled within the school district, on the premises of the State Fair, at 8:00 p.m. on a Friday night (Doc. 28 at ¶ 38), liability would still not be established because Joseph was not injured on the Fairgrounds. See e.g. Maynoldi, 30 So. at 540 ("**[T]he boundaries of liability are normally the boundaries of the school-sponsored venue**.") (emphasis added); Kazanjian, 967 So. 2d at 264 (school owed no duty to supervise student who was killed in car accident because the injury occurred outside of school property); Concepcion v. Archdiocese of Miami, 693 So. 2d at 1105 (school's obligation of reasonable supervision does not extend to off premises events during non-school hours, at that point, the parent or guardian's

11

duty of supervision must resume); Glaser ex rel. Glaser v. Emporia Unified Sch. Dist. No. 253, 271 Kan. 178, 21 P. 3d 573 (2001) (holding that a middle school owed no duty to a student who was injured when struck by a car after he ran off school grounds into traffic).

Thus even assuming the School Board had a duty of reasonable supervision extending to a private school student attending Student Day, the Amended Complaint does not allege that Joseph was injured on the premises of the State Fair. Instead, Plaintiff alleges that the injury occurred far away from the premises on a public highway. Specifically, Plaintiffs allege that, after being detained and ejected from the Fairgrounds at approximately 8:00 p.m., deputies left Joseph outside of Gate 4 of the Fairgrounds. (Doc. 23, ¶¶ 38, 42). It is not alleged that the School Board had any role in ejecting Joseph from the Fairgrounds or the decision to leave Joseph outside of Gate Four. After Joseph's release by the HCSO, at some unspecified, later time, he attempted reach the entrance to the Fairgrounds by crossing Interstate 4, where he was tragically struck and killed by a passing motorist. (Id. at ¶ 50). Therefore, and again, even if Joseph was a Hillsborough County public school student (which he was not) attending a "school sponsored" or "school related" event (which he was not), the injury is not alleged to have occurred within the boundaries of the alleged school event. Accordingly, any wrongful death claim against the School Board based on a claim of direct negligence by the School Board must be dismissed with prejudice.

### III. PLAINTIFF FAILS TO PROPERLY ALLEGE A CLAIM FOR VICARIOUS LIABILITY AGAINST THE SCHOOL BOARD AND OTHERWISE FAILS TO STATE A BASIS FOR IMPUTING LIABILITY ON THE SCHOOL BOARD FOR ANY ALLEGED NEGLIGENT ACTS OF THE HCSO.

In the obvious absence of a direct duty, Plaintiff appears again to attempt to bootstrap to the School Board duties purportedly owed by other defendants, through some type of vicarious liability theory. This effort again fails both factually and procedurally.

First, the conclusory agency allegations in the count itself are disproven by the specific factual allegations in the background. "The court need not accept as true internally inconsistent factual allegations or unwarranted deductions." Casey v. Florida Coastal Sch. of L., Inc., 3:14-CV-1229-J-39PDB, 2015 WL 10096084, at *8 (M.D. Fla. Aug. 11, 2015). Thus, this Court should not consider the conclusory allegation in the wrongful death count that "[a]t all times material, deputies of the HCSO and other providers of security at the Student Day event on February 7, 2014, were acting as the agents, servants, employees or representatives of the School Board and were acting on the School Board's behalf and for the benefit of the School Board" (Doc. 23 at ¶ 66), because it conflicts with the specific factual allegations elsewhere that the Fair Authority hired and paid for the HCSO to provide security at the State Fair. (Doc. 23 at ¶ 16); Casey, 2015 WL 10096084, at *14, n. 17.

Second, Plaintiff alleges absolutely no ultimate facts connecting the School Board to the HCSO in support of its conclusory, internally inconsistent allegation regarding the alleged agency relationship between the School Board and the HCSO. Nevertheless, Plaintiff baldly alleges in its count against the School Board that the deputies of the HCSO and other providers of security at the Student Day event were the agents of the School Board, and, thus, the School Board should be liable for the HCSO deputies' alleged negligent acts arising out of the detention and ejection of Joseph from the State Fair. (Doc. 23 at ¶¶ 66–68). In other words, it appears that Plaintiff is alleging the School Board should be held vicariously liable for the negligent acts of the HCSO deputies. See Armiger v. Associated Outdoor Clubs, Inc., 48 So. 3d 864, 874 (Fla. 2d DCA 2010) (describing vicarious liability as a circumstance where "the vicariously liable party has not breached any duty to the plaintiff; its liability is based solely on the legal imputation of responsibility for another party's tortious acts.").

Plaintiff's effort here depends upon the existence of an agency relationship. The party seeking to establish an agency relationship carries the burden of proof. Chase Manhattan Mortgage Corp. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A., 694 So. 2d 827, 832 (Fla. 4th DCA 1997). As with the previous pleading in this case, Plaintiff has failed to carry this burden in the Amended Complaint under either an actual agency or apparent agency theory of liability.

"[T]he elements essential to the existence of an **actual agency** relationship are: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent." Ilgen v. Henderson Properties, Inc., 683 So. 2d 513, 515 (Fla. 2d DCA 1996). Plaintiff did not allege any of these requisite elements. Indeed, beyond the jurisdiction and parties sections of the complaint, the School Board is only mentioned in three (3) paragraphs, all of which relate only to the distribution of tickets to School Board students. (Doc. 23 at ¶¶ 13–14, 37). These allegations have nothing whatsoever to do with any alleged relationship between the School Board and the HCSO, who are two (2) entirely separate agencies of the State. Thus, any claim based upon a theory of actual agency should be dismissed with prejudice. Ilgen, 683 So. 2d at 515 (affirming dismissal with prejudice plaintiff's claim of the existence of an actual agency relationship where the plaintiff failed to adequately allege that the principal acknowledged that the alleged agent would act for him).

"Three elements are needed to establish an **apparent agency**: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation." Id. at 514 (Fla. 2d DCA 1996). Apparent authority does not arise from the appearances created by the purported agent.

Izquierdo v. Hialeah Hosp., Inc., 709 So.2d 187, 188 (Fla. 3d DCA 1998). Instead, apparent authority exists only where the principal creates the appearance of an agency relationship. Id. Not only does Plaintiff fail to allege any of the requisite elements of apparent agency, there also is not a single fact alleged in the Amended Complaint that would suggest that the School Board allowed or caused Joseph to believe that the HCSO deputies had authority to conduct any acts on behalf of the School Board at Student Day. Thus, Plaintiff cannot rely on a claim of apparent agency to build a case against the School Board for the actions or omissions of the HCSO deputies and any claim based upon a theory of apparent agency should be dismissed with prejudice.

Finally, even assuming sufficient facts were alleged that would establish the requisite agency relationship under either an actual agency or apparent agency theory, Florida law is clear that a vicarious liability claim must be specifically plead as a separate cause of action, including specific allegations sufficient to establish an agency relationship or some other basis for vicarious liability. See Goldschmidt v. Holman, 571 So. 2d 422, 423 (Fla. 1990) (holding that a plaintiff must specifically allege a defendant's vicarious liability in the complaint, and that because the complaint failed to plead a separate cause of action for vicarious liability and failed to set forth any ultimate facts to establish either actual or apparent agency, or any other basis for vicarious liability, the plaintiffs failed to allege grounds entitling them to relief); General Asphalt Co, Inc. v. Bob's Barricades, Inc., 22 So. 3d 697, 699 (Fla. 3d DCA 2009) ("Florida law is clear that in order to pursue a vicarious liability claim, the claimant must specifically plead it as a separate cause of action.").

Here, Plaintiff does not make a separate claim for vicarious liability. And Plaintiff provides no facts establishing any agency relationship between the School Board and the HCSO.

If anything, the factual allegations of the Amended Complaint specifically contradict any agency relationship between the two entities, as Plaintiff alleges that the HCSO security at the fair was provided and paid for by the Fair Authority. (Doc. 23 at ¶ 16). As Plaintiff has not asserted a separate claim for vicarious liability, and further does not include in the Amended Complaint a basis for which any negligence on the part of the HCSO deputies could be imputed to the School Board, Plaintiff's claim for wrongful death against the School Board based upon any actions or omissions of the HCSO deputies must be dismissed.

## CONCLUSION

Based upon the foregoing reasons, the School Board respectfully requests that this Court dismiss this wrongful death action as against the School Board with prejudice.

/s/ Robert W. Boos
Robert W. Boos, Esq.
Florida Bar No. 558079
bob.boos@arlaw.com
lisa.stallard@arlaw.com
Deborah H. Oliver, Esq.
Florida Bar No. 485111
Primary: deborah.oliver@arlaw.com
Secondary: madeline.algarin@arlaw.com
Chelsea C. Harrison, Esq.
Florida Bar No. 98536
Primary: chelsea.harrison@arlaw.com
Secondary: lisa.stallard@arlaw.com
ADAMS AND REESE LLP
101 E. Kennedy Blvd., Suite 4000
Tampa, Florida 33602
(813) 402-2880 (Telephone)
(813) 402-2887 (Facsimile)

James A. Murman, Esquire
Florida Bar No.: 0182913
BARR, MURMAN & TONELLI, P.A.
201 E. Kennedy Boulevard, Suite 1700
Tampa, Florida 33602
Telephone: (813) 223-3951
Facsimile: (813) 229-2254

E-mail: jmurman@barrmurman.com
Secondary: rviteri@barrmurman.com

***Attorneys for Defendant The School Board
of Hillsborough County, Florida***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of May, 2016, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties of record.

*/s/ Robert W. Boos*
Robert W. Boos, Esq.