```
 1
 1                 UNITED STATES OF AMERICA
              UNITED STATES DISTRICT COURT
 2                MIDDLE DISTRICT OF FLORIDA

 3         Docket No. 8:16-cv-00274-MSS-CPT

 4          HONORABLE CHRISTOPHER P. TUITE
        UNITED STATES MAGISTRATE JUDGE PRESIDING
 5

 6   ANDREW JOSEPH, JR., as natural
     father, next friend, and personal
 7   representative of the Estate of
     Andrew Joseph, III, deceased,
 8
                     PLAINTIFF,
 9
                     VS.                    Tampa, Florida
10                                          November 7, 2018
     CHAD CHRONISTER, in his official
11   capacity as the Sheriff of
     Hillsborough County, State of Florida;
12   THE FLORIDA STATE FAIR AUTHORITY, an
     instrumentality of the State of
13   Florida; Deputy Sheriff HENRY
     ECHENIQUE, in his individual capacity;
14   Deputy Sheriff MARK CLARK, in his
     individual capacity; Deputy Sheriff
15   STEPHEN JONES, in his individual
     capacity; and Deputy Sheriff ADRIAN
16   CHESTER, in his individual capacity,

17                    DEFENDANTS.

18

19                   MOTION HEARING
              TRANSCRIPT OF DIGITAL RECORDING
20

21

22   SHARON A. MILLER, CSR, RPR, CRR, FCRR
     IL CSR 084-2617
23   FEDERAL OFFICIAL COURT REPORTER
     801 N. FLORIDA AVENUE, SUITE 13A
24   TAMPA, FLORIDA 33602

25
```

```
 1    APPEARANCES OF COUNSEL:

 2    ON BEHALF OF PLAINTIFF:

 3              RUBIN & RUBIN
              BY:  MR. GUY BENNETT RUBIN and
 4                 MR. TODD MARTIN NORBRATEN
              P.O. Box 395
 5            Stuart, FL  34995
              (772-283-2004
 6            grubin@rubinandrubin.com

 7

 8

 9    ON BEHALF OF DEFENDANTS:

10
              HILLSBOROUGH COUNTY SHERIFF'S OFFICE
11            BY:  MS. THEA CLARK and
                   MR. JASON GORDILLO
12            2008 E. 8th Avenue
              Tampa, Florida 33605
13            (813) 247-8102
              tclark@hcso.tampa.fl.us
14            jgordill@hcso.tampa.fl.us

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              COURTROOM DEPUTY CLERK:  Andrew Joseph, Jr.,
 2    versus Chad Chronister, et al., 8:16-cv-74-T-35CPT.
 3              THE COURT:  Counsel, if I could have your
 4    appearances for the record beginning with the
 5    Plaintiff.
 6              MR. RUBIN:  Yes.  This is Guy Rubin.  Good
 7    morning.  This is -- I am Counsel for the Plaintiff
 8    and also on the line but on a separate line is my
 9    associate Todd Norbraten.
10              THE COURT:  Good afternoon to you both.  And
11    for the defense?
12              MS. CLARK:  Thank you, Your Honor.  Thea
13    Clark, Counsel for the Hillsborough County Sheriff
14    office and the three named deputy defendants, and with
15    me is Jason Gordillo who is also legal counsel for the
16    Sheriff and the deputies.
17              THE COURT:  Ms. Clark, are you going to be
18    taking the lead in the matter?
19              MS. CLARK:  Yes, sir.
20              THE COURT:  I put this on the schedule in
21    somewhat of an expedited manner because of the
22    scheduled deposition for tomorrow of the 30(b)(6)
23    witness.  It is the Defendant's motion, Ms. Clark, so
24    I'll look to you.  As an initial matter, you should
25    assume, as is the case, that I'm familiar with the
```

1    papers but happy to hear brief argument from both

2    sides.

3           MS. CLARK:  Thank you, Your Honor.  And we

4    appreciate the time, Your Honor, on short notice.  We

5    filed the motion for protective order but quite

6    frankly I don't think we needed to.  I think if

7    Plaintiff wanted to extend discovery and change our

8    agreement to what we had agreed to prior to the depo,

9    they should have filed a motion to compel or for

10   extension of time within the discovery cutoff date.

11   They did not do that and instead they directed me to

12   file a motion for protective order.  I wanted to get

13   ahead of it.  I wanted to make the Court aware.  I

14   didn't want to just not show up at a deposition and

15   have this come up later.  I wanted to have it

16   addressed, but I think quite frankly the issue is

17   mute.

18          Discovery was agreed to take place outside the

19   discovery deadline.  I was certainly agreeable to do

20   that until I received, as in the motions as you read,

21   Your Honor, the parameters of that was changed greatly

22   by what they wanted to ask the 30(b)(6) witness.  That

23   was done an hour before the discovery cutoff at the

24   last minute.  We had been together for depos for three

25   days.  This never came up.  It was never discussed.  I

1    was just emailed as you saw, and I can't agree to

2    that.  We have a very short deadline for summary

3    judgments.  This case has been pending since February

4    of '16.

5           As is outlined in my motion, the time line

6    there has certainly been more than adequate time for

7    all of us to conduct our discovery, so I think the

8    issue is mute.

9           I think if Plaintiff wanted to extend this or

10   change the terms of our agreement, they needed to do

11   that before the cutoff and they haven't even done that

12   now.  I've brought this before the Court just again in

13   an abundance of caution and not wanting this to come

14   before the Court last minute or have problems with our

15   other deadlines in the case.  The case law I've cited

16   is very clear.  There's some recent cases from this

17   circuit in the Middle District and it goes back 10, 15

18   years that this Court has been very strict about that,

19   that the lawyers are supposed to work within the

20   discovery deadlines and if they can't then the Court's

21   not going to get involved in an argument and that's

22   basically what we have here.  We have a disagreement

23   about how far Plaintiff can go outside the discovery

24   deadline.

25           As indicated in my motion, I went through the

1    fourth amended renotice again to look at the

2    additional questions and, again, Your Honor, these are

3    very extensive.  It would require two to three, maybe

4    even more, different deputies.  They've extended the

5    length of the time.  At first we were just talking

6    about the year this occurred.  Now we're four years,

7    eight years into the past.  That would require me to

8    get other commanders from the sheriff's office, other

9    deputies.

10         As you can see, the original notice that was

11    sent to me six different times prior to the one before

12    this just asked my 30(b)(6) representative just to

13    identify documents and other people for deposition.

14    It did not ask substantive questions.  It did not go

15    into the level of detail that we have here.  That's

16    why I agreed to it.  That's why I agreed to it outside

17    the discovery deadline.

18         I can represent to the Court I would never

19    have agreed to this had I known this was the extensive

20    list of items to be covered and I can't cover it in

21    the time line that we have, so I think the issue is

22    mute.  I think the Court could rule that way as such

23    based on the discovery manual, based on the case law

24    of this Court, and so that addresses the issue

25    certainly of the deposition itself.  Certainly the

1     other issue about Mr. Joseph's appearance at the
2     deposition, if the Court finds that no further
3     depositions are needed, that issue is mute as well.  I
4     also put in the other issues --
5           THE COURT:  Just to be clear, Ms. Clark,
6     you're not asking that the deposition scheduled for
7     tomorrow be canceled.
8           MS. CLARK:  I am -- I am, Your Honor, and for
9     this reason.  The 13 different items that were taken
10    out of the original notices that came to me six
11    different times, they took those out and replaced them
12    with 13 new varied topics, so.  And quite frankly,
13    Your Honor, when you look at all 21 of the items, they
14    have all that information.  It is a waste of time at
15    this point.  I think Plaintiff would have to agree
16    it's a waste for them to come down to Stuart, Florida
17    to ask my Major eight questions that they already have
18    the answer to.
19          Because this case has gone on this long, we've
20    exchanged an enormous amount of discovery, we've done
21    depositions, so for that reason I think it's just a
22    waste of time, quite frankly, for all parties to have
23    to take even under the old version, but, you know,
24    certainly I wasn't opposed to that at first because it
25    should have been a very short deposition quite

```
 1    frankly.  Here's the documents, here's what we've
 2    already provided.  They have all these names, and from
 3    26(a) disclosures on forward they have every 21 items.
 4    They already have this information.  I think that's
 5    why when they finally looked at it and realized this
 6    is what we're -- we have it all.  That's why they took
 7    the 13 out, but I could represent the other eight are
 8    about the same.  The information has been exchanged,
 9    so for that reason I don't think it's necessary at all
10    at this late stage.
11            I certainly would ask the Court that the newer
12    ones not be addressed at all.  I think they're way
13    outside of the parameters of what we agreed on, way
14    outside the parameters of what we have time and what
15    the case law allows when you're outside of discovery.
16            THE COURT:  Okay.  Anything else, Ms. Clark?
17            MS. CLARK:  No, sir.  With respect to the
18    issue with Mr. Joseph, again, if we don't have a depo,
19    that's mute.  If we do, I would just ask the Court to
20    consider -- I know it's the last one but that's kind
21    of what concerns me about it.  We're kind of getting
22    to the end here, and I don't know how much more of
23    this kind of behavior will escalate, and I'm concerned
24    about that.
25            And then finally, if the Court finds merit in
```

1    my motion, I would ask the Court to consider

2    attorneys' fees and costs and the fees associated with

3    past discovery that has not been paid.

4          THE COURT:  Thank you, Ms. Clark.

5          MS. CLARK:  Thank you, sir.

6          THE COURT:  Mr. Rubin or Mr. Norbraten, which

7    of you is going to take the lead in arguing this?

8          MR. RUBIN:  This is Guy Rubin.  I'll take the

9    lead, Your Honor.

10         THE COURT:  Okay.  Mr. Rubin.

11         MR. RUBIN:  Thank you.

12         THE COURT:  Floor is yours.

13         MR. RUBIN:  Thank you very much.  We need to

14   go back to why this deposition was scheduled for

15   tomorrow.  The only reason that it was scheduled for

16   tomorrow was because the sheriff, the sheriff's

17   department hired an expert named Ken Katsaris and

18   disclosed his report, and then when we asked for

19   deposition dates for Mr. Katsaris through Counsel for

20   the Sheriff, they provided to us two and only two

21   deposition dates both outside of the discovery period,

22   one on Veteran's day itself and another one on a

23   Saturday.  We replied and we said we would like to

24   take the deposition on a regular date within the

25   discovery period.  They went back to Mr. Katsaris.

1 Mr. Katsaris did not relent.  Counsel for the Sheriff

2 then advised us that these were the dates, take them

3 or leave them essentially and we said, I'm sorry, you

4 know, we can't accept a Saturday or a Federal holiday

5 to take these depositions, we need a regular day.  So

6 we filed a motion to strike on October the 11th, a

7 motion to strike Mr. Katsaris as their witness for

8 failure to cooperate and give us a reasonable date to

9 take his deposition.  The same day we filed the motion

10 to strike, all a sudden another date became available

11 for Mr. Katsaris and it was on that date that we filed

12 the motion to strike October the 11th that we were

13 offered to take the deposition of Mr. Katsaris October

14 the 19th.  The only problem was we already had a

15 deposition scheduled for October 19th and that was the

16 30(b)(6) of the Sheriff's rep.  So we said, okay,

17 we'll go ahead and accommodate the 19th but we need

18 another date for the 30(b) rep, and by agreement we

19 decided that it would be tomorrow.  That was -- when

20 Ms. Clark says the terms of the agreement to Your

21 Honor, that was the agreement.  There was no written

22 agreement.  There was no issue on the scope of the

23 30(b)(6).  Any litigating Counsel who does cooperate

24 or entity depositions would know that a 30(b)

25 corporate rep can be asked any question.  You don't

1    need to provide questions at all.  All you need to

2    provide are general topic areas under the rule, and

3    then it's up to the entity or the corporation to

4    designate appropriate representatives under Rule 26

5    and under Rule 30.  The only requirement is to provide

6    reasonable notice.

7          We revised our notice on the 26th which was

8    the last day of regular discovery, and we -- the

9    reason we revised our list of topics is because we

10   wanted to prepare for the 30(b)(6) deposition

11   appropriately and so we took into consideration all of

12   the progress that had been made over the last six

13   weeks which included ten depositions, including the

14   Plaintiff's witnesses, experts, the captain of the --

15   the retired captain of the Sheriff's Department who

16   was the No. 1 and No. 2 man in charge of the Fair in

17   2014 and we asked him questions about rules and

18   policies and historical aspects of the operation of

19   the Fair as it relates to security and deputy

20   enforcement and juveniles.

21         We also took the depositions of the State Fair

22   corporate representative along with two of the

23   executives, Ms. Carmen and Mr. Pesano which Your Honor

24   will remember was the subject of a motion for

25   protective order which was denied and we took the Fair

1    depo and it did turn out that it was necessary to take

2    those other two depositions.

3          THE COURT:  Mr. Rubin, allow me to interject.

4    As much as I know you would like to run the Court

5    through the breadth of discovery, let me ask you a few

6    questions.

7          MR. RUBIN:  By all means.

8          THE COURT:  Did you provide the Defendants

9    with your fourth renotice of the 30(b)(6) deposition

10   scheduled now for tomorrow on October 15th?

11         MR. RUBIN:  I'm going to have to ask my

12   paralegal to come into my office and tell me when the

13   date of a notice of the last notice before the revised

14   one was provided.  And she's coming in.  Yes.  Yes, we

15   did.

16         THE COURT:  Okay.  Then that was roughly 11

17   days before the then subsequent renotice with the

18   additional topics?

19         MR. RUBIN:  Right.  Exactly.  So we had

20   provided one with eleven days' notice and then when we

21   revised it, we provided thirteen days' notice before

22   the next one, and so getting to the direct issue, and

23   I apologize --

24         THE COURT:  Let me just go back to that

25   comment, Mr. Rubin.

1          MR. RUBIN:  Sure.

2          THE COURT:  The renotice, the fourth renotice

3     on October 15th, the deposition was then scheduled for

4     when?

5          MR. RUBIN:  That was scheduled for I

6     believe -- I believe it was at that time -- that would

7     have been on the 25th. -- I'm sorry.  That was for

8     November the 8th.

9          THE COURT:  Okay.  So you provided the fourth

10    renotice on October 15th in anticipation of the

11    30(b)(6) deposition on the 8th of November?  I just

12    want to make sure I understand the facts.

13         MR. RUBIN:  Okay.

14         THE COURT:  Do I understand that correctly?

15         MR. RUBIN:  Yes.  That is correct.

16         THE COURT:  Okay.  So you can continue, but

17    focusing on the instant dispute, I understand the

18    history behind how the parties arrived at the

19    agreement for November 8th.

20         MR. RUBIN:  Okay.  And I don't mean to cut you

21    off.  Shall I continue?

22         THE COURT:  Please.

23         MR. RUBIN:  Okay.  And so the reason that I

24    was going through that is that my point is that we had

25    a flurry on both side of depositions over the last six

1    weeks in which we learned a lot of information about

2    what happened, people who had factual information

3    about what happened on the day of and in historical

4    terms, and so we have every right, any party has a

5    right to adjust their topics list as long as

6    reasonable notice is provided to the other side based

7    upon the advancement of discovery and strategic

8    decisions on what they want to get out of a 30(b)(6)

9    deposition, and that's exactly what we did.  We're

10   fully within our rights.  There should be no surprise.

11   It was fully within the time frame of discovery as per

12   our agreement that the actual 30(b) notice, the 30(b)

13   deposition would be taken on November the 8th, so the

14   objection here is you can't change the topics but

15   there is no rule and there is no case law that says

16   you can't change topics.

17        Now, you could change topics the day before

18   the deposition, I could understand that that would

19   fall within Rule 26(c)'s prohibition against

20   annoyance, expression, unduly burdensome and those

21   kinds of issues that a prospective deponent can bring

22   to the attention of the Court and ask for relief but

23   we don't have that here.  There is no proof of

24   annoyance, suppression, unduly burdensome.

25        THE COURT:  Well, Mr. Rubin, allow me to

 1    interject, allow me to interject there.  The claim

 2    that has been made is that the topics are greatly

 3    expanded are not necessarily answerable by the

 4    designated 30(b)(6) witness.  In fact, multiple

 5    witnesses are potentially, if not necessarily,

 6    required, and in your motion -- I'm sorry -- in your

 7    response to the motion you indicate on Page 2 at the

 8    end of the first paragraph or allow for the fact that

 9    the Hillsborough County might have to prepare

10    appropriate witness or witnesses.

11            MR. RUBIN:  Yes.

12            THE COURT:  So the claim here is that your

13    expansive or expanded topics rather may involve

14    multiple witnesses as opposed to a singular witness.

15    Let me just direct you to another aspect of your

16    pleading if I could.  In your pleading you allude to

17    the fact in Footnote Two that Plaintiff's Counsel was

18    involved in complex commercial litigation in Seattle

19    from late 2017 through most of 2018.  I see that both

20    you and Mr. Norbraten are listed on the pleading.  Who

21    was involved in that litigation in Seattle, the two of

22    you or just one?

23            MR. RUBIN:  No, it's primarily myself.

24            THE COURT:  Okay.

25            MR. RUBIN:  I think Mr. Norbraten may have

1    been tangentially involved in some things but most of

2    the time-consuming issues were my travel and work in

3    that case.

4            THE COURT:  I understand.

5            MR. RUBIN:  I'll just leave it at that.

6            THE COURT:  Then with respect to the issue of

7    Mr. Joseph and his behavior at the depositions, do you

8    have anything?

9            MR. RUBIN:  Would you like me to --

10           THE COURT:  Forgive me.  That's precisely why

11   I brought it up is just to hear your argument with

12   respect to that issue.

13           MR. RUBIN:  Well, I have -- I have been --

14   either I or Mr. Norbraten who's on the line have been

15   to every deposition I believe that Mr. Joseph has been

16   to except for maybe one where it was taken by

17   telephone and I have not observed any problematic

18   behavior.  I have not observed any threatening

19   behavior.  He is a party.  I think it's expected that

20   he may be emotional because he lost his son but we've

21   gotten through a couple of years almost now of

22   litigation and there's been no issue, no problem, no

23   threat.  We're talking about sheriff's deputies

24   heavily and law enforcement officers.  If there was

25   anything that was a potential threat they certainly

1    have the wherewithal to do something about it.

2    Mr. Joseph has never threatened anyone physically or

3    in words.  He's never brought a weapon to any

4    proceeding, so I think that this is really just an

5    exaggerated attempt to make a party look bad.

6              THE COURT:  Okay.  Anything else, Mr. Rubin?

7              MR. RUBIN:  Yes.  Because Your Honor brought

8    up multiple versus single representatives and

9    referencing that part of our briefing where I put that

10   in there, the reason that I put that in there is

11   because the rule does not give the noticing party the

12   right to identify a specific individual of the entity.

13   It is up to the entity to designate one or more.  If

14   this entity wants to make one person the responsible

15   party to answer all of the questions, they can

16   certainly coach up one person, and it doesn't take

17   more than one unless the entity decides that they want

18   to produce more than one.

19             The fact of the matter is that Major Losat was

20   identified by Ms. Clark as the person who would sit as

21   a 30(b) rep but she could change that at the last

22   minute if she wanted to.  That is kind of a gratuitous

23   information to us, but if Major Losat is to be the

24   person who's the 30(b) rep there certainly can be no

25   prejudice of any kind because he has sat through

 1    almost every deposition in this case.  He knows what
 2    the facts of this case are and what the historical
 3    issues are.
 4         And one final point, Your Honor, which is that
 5    Ms. Clark argued that we already have this information
 6    and this shouldn't take very long.  A 30(b)(6)
 7    deposition is a very unique and different kind of a
 8    deposition than any other witness deposition.  We can
 9    get testimony from deputies and captains and other
10    employees of the Sheriff's Department but those don't
11    bind the Department.  The only -- they could
12    potentially under certain circumstances, but the only
13    way you can ask a corporation of its positions of
14    legal and factual is through a 30(b)(6) deposition,
15    and so while we have collected information which may
16    be relevant and admissible from a factual standpoint
17    from other witnesses, qualitatively it is a completely
18    different animal to ask the party depositions that
19    bind the entity.
20         THE COURT:  Thank you, Mr. Rubin.  Ms. Clark,
21    anything in response?
22         MS. CLARK:  Yes, Your Honor.  Your Honor, the
23    purpose of 30(b)(6) is for the Plaintiff to identify
24    subject matter so that the corporate rep, the
25    corporation, the sheriff's office can provide the

 1   person who can answer those questions.  That's why
 2   lists are given.  For him to say I'm supposed to guess
 3   what they want to ask or I'm supposed to anticipate
 4   the purpose of 30(b)(6), that's why you attach that
 5   list so the person with knowledge about and the
 6   Plaintiff gives the list of what they want to inquire,
 7   otherwise how do I know who to produce?  That's what
 8   they did on six different occasions before the 11th
 9   hour, an hour before discovery closed and then they
10   changed it, so to say that -- I'm just supposed to
11   anticipate or I can guess or it doesn't matter or they
12   can change it, no, that's not the purpose of 30(b)(6).
13   They need to itemize the subject matter is what they
14   did, is what I originally agreed to based upon their
15   representation of what they wanted to have an inquiry
16   about.
17          I would also note that had they taken the
18   commanders that I listed on my 26(a) disclosure they
19   would have gotten the answers to the questions they're
20   asking.  They didn't depose Colonel James Previtera.
21   They didn't depose Major Al Greco, Captain Wellinger,
22   Sergeant Anthony who created the entire security plan.
23   These have all been listed since the beginning of this
24   case, Your Honor, and the reason why there's a flurry
25   of activity at the end is because Plaintiff waited

 1   until the last six weeks to do discovery in this case.

 2   This case has been back on appeal for a long time.

 3   They did nothing for seven months, nothing.  And yet

 4   now we're scrambling and they're burdening me and my

 5   clients when we have summary judgment deadlines.

 6   That's exactly what the Court says it will not get

 7   involved in in these cases and why the Court doesn't

 8   get involved in these kind of disputes post-discovery.

 9   They've had plenty of time.

10           And I'll make one note about Sheriff

11   Katsaris's deposition.  When they gave the dates, they

12   wanted the date.  He got open the 19th which we had

13   scheduled all day for Major Losat's deposition, so we

14   supplemented Katsaris with Losat.  I did that as a

15   courtesy.  Everyone is getting out of town, I can get

16   my Major there, I can get there, I'll change the date,

17   but that deposition only lasted to 2:00 o'clock that

18   day, Your Honor, from 10:30 to 2:00 o'clock and we

19   were done with Sheriff Katsaris.  Mr. Rubin had to

20   leave because he had tickets for his wife's

21   anniversary and he had to get out of town, so if they

22   needed to use that date to take Major Losat, they had

23   the time.  This is not my emergency.  It's not

24   something the Sheriff's office created or these

25   deputies created this delay.  This is their delay, and

1   they're cutting into my time for summary judgment, and

2   it is a burden on the Sheriff's office.  It is delay

3   on their part, and it is expensive for my client to

4   have me come here and argue these when we should be

5   back at the office preparing our motions so the Court

6   has that in a timely fashion.  The Sheriff's office

7   has done nothing to delay this matter, and I think

8   that's pretty evident by the time line that's set

9   forth here.  The delay has been on the Plaintiff and

10  their last minute trying to get all this together is

11  why we're here.  I appreciate the Court's time.

12          THE COURT:  Thank you, Ms. Clark.  Mr. Rubin,

13  anything briefly in response?

14          MR. RUBIN:  Only that when we set an expert

15  for deposition, Your Honor, which was taken as agreed,

16  we don't know if it's going to last all day or part of

17  the day.  When we scheduled it, they actually provided

18  that it had to start late in the morning for

19  Mr. Katsaris to get there.  I told them I had -- ahead

20  of time that I had issues, family issues where I had

21  to get back home otherwise I'd be in trouble with my

22  family and that was by agreement to have a window of

23  opportunity on that day.

24          We'd originally planned to schedule the 30(b)

25  early in the morning and be done by 2:00 o'clock or as

 1     late as 3:00 o'clock.  So I don't know why she's
 2     bringing that up, but I have not heard that 13 days is
 3     any oppression or problem in the change of the topics
 4     to talk to the officers or one or more
 5     representatives, whoever they choose to get, the one
 6     prepared to address those topics.  It's not a long
 7     list of topics.  It's not an unsurprised -- a
 8     surprising list of topics.  It's the same thing that
 9     we've been talking about in this case for almost three
10     years, so there's no prejudice.  They can be working
11     on their summary judgment motions.  It doesn't take a
12     whole team of lawyers which they have working on this
13     case internal to the Sheriff's Department to prep a
14     30(b) rep.
15            And then one last thing, Your Honor.  If they
16     really think that there's prejudice and the Court
17     agrees that there's any prejudice in giving 13 days
18     notice to change the topics, this Court has the
19     ability to provide a remedy for that to ameliorate the
20     prejudice while also giving the Plaintiff the
21     discovery that's necessary in this case.  And those
22     things could include moving the deposition to next
23     week if they need more time to prep or extending by a
24     day or two the dispositive motion deadline which would
25     not be prejudicial to anyone because this trial isn't

1    set until I believe it's June so we're not on a tight

2    schedule.  We did get back from an appeal which cut

3    significantly the time to do what we need to do in

4    this case and, you know, inequity to getting a full

5    set of facts developed for the summary judgment.  And

6    then for trial, we need to have a 30(b)(6) deposition

7    and it would be a draconian remedy to grant what

8    they're asking for which is just completely cancel

9    tomorrow and don't let us ask any questions.

10        THE COURT:  Thank you, Mr. Rubin.  The Court

11   will take a brief recess.

12                 (Recess had.)

13        THE COURT:  I appreciate the arguments of

14   Counsel from both sides.  The parties are obviously

15   well represented in this matter.  The Court having

16   heard argument this afternoon and being apprized of

17   the nature of the disputes by way of the pleadings as

18   well as the argument is going to grant the Defendant's

19   motion for a protective order in part.

20        The deposition that is scheduled for tomorrow

21   for the 30(b)(6) witness shall go ahead as originally

22   anticipated, the topics of which will be dictated by

23   the October 15th, 2018 notice to which the Court

24   referred earlier in argument and to which Mr. Rubin

25   acknowledged had been delivered on that date.

 1          To the extent the Plaintiff seeks to inquire
 2     about the topics that are listed in the notice that
 3     was sent out on the last day of the discovery deadline
 4     in the afternoon, that will not be allowed.
 5          If the parties elect ultimately that for
 6     reasons that they decide between them that the
 7     deposition they envision will be a meaningless
 8     exercise in light of the discovery, that is a decision
 9     that the parties can make between themselves.
10          In support of the Court's ruling, a number of
11     observations are appropriate.  As an initial matter,
12     procedurally the Court is sensitive to the fact that
13     when a situation such as this arises at the 11th hour
14     that one party can be put in the position, as
15     Ms. Clark has argued, of having to bear the burden of
16     seeking relief from the Court and then as a strategic
17     matter bear a burden purportedly under the rules.
18     Even assuming that the Sheriff's office bears the
19     burden of demonstrating good cause for its request for
20     protective order to limit the scheduled 30(b)(6)
21     deposition to the topics as originally delineated by
22     the October 15th notice, they have shown that.  I
23     respectfully disagree with the Plaintiff's argument
24     that there hasn't been a sufficient showing in that
25     regard.  The topics which were included in the October

1    26th notice both temporally and substantively have

2    expanded the breaths of the proposed 30(b)(6)

3    deposition materially such that that deposition may

4    require more than one witness, additional preparations

5    and another burdens imposed upon the Plaintiff -- the

6    Defendant rather.

7            It is fairly clear in listening to the

8    argument of the parties this afternoon and also from

9    reading the pleadings that the availability of Counsel

10   and of witnesses has been a challenge, whether it has

11   been a witness for whom there was some difficulty in

12   scheduling for the deposition that was ultimately held

13   on October 19th or for the 30(b)(6) witness or in the

14   case, Mr. Rubin, yourself of the demands of the

15   litigation that you were conducting in Seattle.  It's

16   fair to look to the parties as working together or

17   holding them responsible for working together to meet

18   the respective demands that both sides were facing

19   both as to Counsel and as to the witnesses.

20           To expand the breadth of the 30(b)(6)

21   deposition on the very last day of discovery less than

22   two weeks in advance of a deposition that had been

23   scheduled and rescheduled multiple times and noticed

24   apparently uniformly throughout or close to uniformly

25   throughout was not paying sufficient heed to and

1    sensitivity to the availability of witnesses and the

2    needs of Counsel.

3         Another observation that the Court has is that

4    this case has been pending for some time, and while up

5    on appeal it has been back for some time and it is

6    apparent that the Plaintiff has had ample opportunity

7    to conduct discovery in this matter, much of which was

8    left for the weeks or months leading up to the

9    deadline.  A party can approach discovery in that

10   manner but they do so at their own peril because the

11   deadlines in the case are set, the parties are on

12   notice of what those deadlines are and I respectfully

13   disagree with Plaintiff in this regard.

14        The Court here in Tampa treats dispositive

15   motion deadlines with great seriousness.  Those are

16   not moved lightly.  If Mr. Rubin was preoccupied with

17   litigation in Seattle, he had the benefit of

18   co-Counsel, Mr. Norbraten, who apparently according to

19   Mr. Rubin attended a number of these depositions to

20   take depositions that might have been required while

21   Mr. Rubin was otherwise unavailable.

22        And, finally, because this 30(b)(6) deposition

23   was by the agreement of Counsel, for the reasons

24   articulated in the pleadings and Counsel here, I

25   recognize there's not complete agreement as to all the

1    circumstances, but nonetheless the parties did agree

2    to conduct it outside the time frame established for

3    discovery by the Court, that is a situation that

4    should not involve the Court to intervene because such

5    efforts are undertaken to do things outside the

6    discovery period to a large degree at the parties' own

7    peril.

8            I am not going to grant the Defendant's

9    request to cancel the deposition.  To me that would

10   not be fair.  There was an agreement that the

11   deposition would go forward on November 8th.  That

12   agreement was made inside of the discovery period. I

13   imagine, Ms. Clark, that in a candid moment that as a

14   professional in good faith you would honor that.  Your

15   understanding pursuant to the October 15th notice, the

16   time that you agreed to the deposition whereas to the

17   topics that had been provided, you had made efforts to

18   schedule or make time with a 30(b)(6) witness who

19   could address those topics and I know that and by

20   shaking of your head I think you understand --

21           MS. CLARK:  Yes, sir.

22           THE COURT:  -- you would live up to that

23   agreement.

24           MS. CLARK:  Yes, sir.

25           THE COURT:  That said, Mr. Rubin, I think in

1    fairness when efforts are undertaken to designate

2    witnesses to answer a list of topics which have been

3    in the case for a lengthy period of time as recently

4    as October 15th before a November 8th deposition, it

5    is not fair to the other side to try to amend them at

6    the 11th hour and then look to the Court for relief

7    either in rescheduling the deposition at the 11th

8    hour.  And I'll note in that regard that the Court has

9    to put this on its own schedule in an expedited manner

10   to put other matters aside because of the way that

11   this has evolved.  It doesn't necessarily reflect well

12   on either side quite frankly, but the Court has done

13   it nonetheless.

14          As to Mr. Joseph, Mr. Rubin, I agree with you

15   that Mr. Joseph having lost a child, many of us have

16   children, no doubt an extremely difficult process for

17   him to endure in this case.  Nonetheless, as an

18   accomplished litigator, I'm sure you understand the

19   importance that any party attending any deposition may

20   have as if the Court were there and that extends to

21   Mr. Joseph.  I'm sure Mr. Joseph is interested in

22   getting to the bottom of the case and having a fair

23   and full litigation of the matter and that can only

24   occur if the process is allowed to play itself out

25   unimpeded by whatever understandable emotions may

1    exist at the time the depositions are occurring, so

2    I'll leave it to you, Mr. Rubin, to ensure that your

3    client, as difficult as this process has been, accords

4    himself at the deposition as he should, and I have

5    every confidence that he will particularly under your

6    guidance.

7           There were two other matters that were raised

8    in the pleadings by the Defendant.  They were not

9    meaningfully argued here, one having to do with costs

10   in attendant to a prior litigation in the case.

11   Ms. Clark, the Court has dealt with this matter on an

12   expedited basis.  It's not clear to me that the

13   parties have met and conferred in the spirit that rule

14   301(g) requires with respect to the issue of costs

15   that you have raised in the pleading.  Quite frankly,

16   it's difficult to resolve that issue on an expedited

17   basis in conjunction with more time sensitive matters

18   that have been raised, so as to your request for costs

19   the Court will deny that without prejudice.

20          To the extent that you wish to pursue that,

21   the parties are directed to meet and confer as

22   required under Rule 301(g) and the parties can raise

23   the issue at a future time if necessary.

24          With respect to the matter of attorneys' fees

25   in bringing the motion, the Court will deny that as

1    well.

2         And just to circle back to the issue of

3    Mr. Joseph, that the Defendants request that

4    Mr. Joseph be precluded from attending the deposition

5    is denied.  Mr. Rubin, I look to you in that regard as

6    I said to provide Mr. Joseph with any appropriate

7    guidance without necessarily deciding as to the merits

8    of his behavior in the past.  It appears that from

9    what the parties have represented, this is the last

10   deposition and I would hate to have that matter come

11   before the Court at this late juncture.

12        Ms. Clark, I look to you initially.  Do you

13   have any questions with respect to the Court's ruling?

14        MS. CLARK:  No, sir.  Thank you, Your Honor.

15        THE COURT:  Mr. Rubin, any questions from the

16   Plaintiff?

17        MR. RUBIN:  The only question that I have,

18   Your Honor, relate to when you compare the list of

19   topics from the first and the second, there is

20   substantial overlap and they are designed to be broad

21   in nature.  And I heard your order granting in part

22   the motion for protective order to be directed to the

23   temporal scope and also the general scope of the

24   question to the extent that they differ from the prior

25   notice.  I don't want to have a disagreement tomorrow

1   while we're taking the deposition, so I guess what I'm

2   looking for is perhaps some clarification.  Normally a

3   30(b)(6) list of topics creates a baseline and any

4   reasonable questions that can emanate from those

5   topics is valid.  I just want to be clear that that

6   rule, that understanding has not been impacted by the

7   Court's protective order today.

8        THE COURT:  The operative notice that will

9   govern tomorrow's deposition is the October 15th, 2018

10  notice which I understand from the Defendant's

11  pleading and from talking with you, Mr. Rubin, is

12  referred to, at least the Defendant's pleading on Page

13  7, as the Plaintiff's fourth renotice, so that is the

14  operative notice, so you're to proceed with the

15  deposition with the understanding that that is the

16  notice that governs the deposition.  The October --

17       MR. RUBIN:  Understood.  Okay.  I'm sorry.

18  I'm sorry.  I didn't mean to interrupt you.

19       THE COURT:  I didn't interpret that that way,

20  Mr. Rubin.  Sometimes it's difficult when parties are

21  on the phone because there's a bit of a delay, and I

22  didn't mean to interrupt you.  Did you have a question

23  further as to what I just said?

24       MR. RUBIN:  No.  It's my understanding that in

25  your response to my question for clarification that we

1   should just proceed as we normally would assuming that

2   that fourth notice topics are the ones that govern the

3   deposition and to all extent the rules are as a

4   regular 30(b) rep would be.

5           THE COURT:  I think that's fair.  Ms. Clark,

6   I'm sure that --

7           MS. CLARK:  I always --

8           THE COURT:  -- when you hear these comments as

9   I would as a practitioner, you may anticipate there's

10   that going to be some discussion tomorrow.

11           MS. CLARK:  Yes, Your Honor.  And, again, the

12   reason why I agreed to this at this late juncture was

13   because the topics are pretty specific and I request

14   Major Losat come and identify, identify, identify,

15   identify, identify, identify, identify a list of chain

16   of command.  Identify -- I can have him identify these

17   documents and identify the people.  That's what they

18   ask, a 30(b)(6), a representative to come give them

19   identities of things, documents.  They have it all.  I

20   can have him tell them again, but if we're going to go

21   past that I think they're not following what I hear

22   the Court instructing us to do.

23           THE COURT:  Just to be clear to both sides,

24   the operative notice is the October 15th notice which

25   I understand to be the fourth renotice and I'm using

1    that characterization because it's so delineated that

2    way on Page 7 of the Defendant's motion.  Both

3    attorneys in this case appearing on this hearing or at

4    this hearing are experienced, so this at this point is

5    like any other 30(b)(6) deposition with an operative

6    notice.  If there's confusion as to what can be asked

7    under that notice, you've got all afternoon, and by

8    local rule and by the spirit of the Federal rules

9    particularly as amended in 2015, there should be ample

10   discussion in an effort to resolve any disputes.  I

11   often tell family members not to be early to a

12   calamity, and I'm sure with experienced Counsel, while

13   you may not agree on everything, that you can resolve

14   whatever disagreements may stem from the notice and

15   the breadth of it.  But I'm going to handle at this

16   point the matter that is before the Court which is the

17   motion for protective order.  That I have done.

18   Mr. Rubin, anything further?

19          MR. RUBIN:  No.  Nothing further, Your Honor.

20          THE COURT:  Thank you.  Ms. Clark?

21          MS. CLARK:  No, sir.  Thank you.

22          THE COURT:  Thank you to both parties.  I

23   appreciate your efforts, and we'll be in recess.

24                    (Which were all the proceedings had

25                     in the above-entitled cause.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2   UNITED STATES DISTRICT COURT  )

3                                 )

4   MIDDLE DISTRICT OF FLORIDA    )

5

6            I, SHARON A. MILLER, Official Court Reporter

7      for the United States District Court, Middle District

8      of Florida, do hereby certify that pursuant to Section

9      753, Title 28, United States Code that the foregoing

10     is a true and correct transcript of the stenographic

11     notes taken by computer-aided transcription taken in

12     the above-entitled cause by the undersigned and that

13     the transcript format is in conformance with the

14     regulations of the Judicial conference of the United

15     States.

16   /S/Sharon A. Miller, CSR, RPR, CRR, FCRR

17   Official Court Reporter

18

19

20

21

22

23

24

25