## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ANDREW JOSEPH, JR., as natural father,
next friend and personal representative of
the Estate of Andrew Joseph, III, deceased,**

       **Plaintiff,**

**v.**                                **Case No.:**    **8:16-cv-00274-MSS-TBM**

**CHAD CHRONISTER, in his official
capacity as the Sheriff of Hillsborough
County, State, of Florida, et al.,**

       **Defendants.**

_____/

### _DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE_

COMES NOW, Defendants, CHAD CHRONISTER, in his Official Capacity as Sheriff of Hillsborough County; and MARK CLARK, HENRY ECHENIQUE and STEPHEN JONES, all in their respective Individual Capacity as Deputy Sheriffs of Hillsborough County (hereafter, "Defendants"), by and through the undersigned counsel file this Trial Brief in accordance with this Honorable Court's Fourth Amended Case Management and Scheduling Order [Doc.225].

This matter arose from events that occurred on the evening of February 7, 2014 at Student Day of the Florida State Fair. During this event, Plaintiff's son, Andrew Joseph, III ("AJ III"), was trespassed and ejected from the Fair event along with a number of his friends. Evidence will show that AJ III's friends had become involved in a physical struggle with some Hillsborough County Sheriff ("HCSO") Deputies. While this was happening, AJ III ran up to the scene and was therefore trespassed from the Fair for disorderly conduct via running on the Midway, which amounted to a

violation of §616.185 and/or §877.03, Fla. Stats.

The evidence will further show that it took approximately forty minutes to process AJ III and his friends, among others, for trespass and ejection by: getting basic information; running their backgrounds to ensure that they were not wanted, missing or endangered; take a photograph of them for identification purposes in case any of them attempted to reenter the Fair; and fill out the trespass/ejection form. During this time, each individually named Deputy Defendant had minimal contact with AJ III. Further, AJ III's cell phone records show that he had his phone with him and was using it during the entirety of the approximate forty minutes.

Lastly, the evidence will show that AJ III and his friends were transported outside of the Fair event but still within Fairgrounds property. Within minutes, AJ III and his friends walked to Gate 4 and waited there for their respective rides. While waiting, AJ III refused numerous offers of assistance from his friends' parents and also failed to contact his own parents on his or another's cell phone. For reasons unknown, AJ III and his friend Corey Thornton were running across Interstate-4 approximately two hours after they were ejected from the Fair. While running across Interstate-4 in the direction of the Hard Rock Casino, and away from the Fair, AJ III was struck and killed by a vehicle traveling on Interstate-4.

Plaintiff asserts that the above-named Defendants violated AJ III's civil rights, which were the proximate cause of his death. Alternatively, Plaintiff asserts that Defendant HCSO was negligent towards AJ III, which was the proximate cause of his death. Defendants flatly reject all assertions made by Plaintiff. Defendants have shown through evidence and case law why each is entitled to a favorable ruling at summary judgment. Should this matter proceed to trial, Defendants fully expect the evidence to show that no Defendant violated any of AJ III's civil rights, committed any act or

omission amounting to negligence or were the proximate cause of his death.

## I.   Plaintiff Lacks Standing

A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them. *Lyng v. Northwest Indian Cemetary Protective Ass'n*, 485 U.S. 439, 445-46 (1988) (citing *Jean v. Nelson*, 472 U.S. 846, 854 (1985); *Three Affiliated Tribes of Berthold Reservation v. Wold Engineering*, 467 U.S. 138, 157-58 (1984); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); and *Ashwander v. TVA*, 297 U.S. 288, 346-48 (1936)).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

At summary judgment, Plaintiff has failed to invoke federal court jurisdiction through Article III standing by not setting forth any evidence satisfying the second element that his injury was fairly traceable to the challenged conduct of any Defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envir. Svcs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Plaintiff's failure to set forth any such evidence will continue if this matter goes to trial.

## II.   Count I - State Wrongful Death action against Defendant HCSO

### A.  Public Duty Doctrine

When addressing the issue of governmental liability under Florida law, the Florida Supreme Court has repeatedly recognized that a "duty analysis" is conceptually distinct from any later inquiry regarding whether the governmental entity remains "sovereignly immune" from suit notwithstanding

the legislative waiver present in Florida Statutes section 768.28. *Wallace v. Dean*, 3 So.2d 1035, 1044 (Fla. 2009) (citing *Pollock v. Fla. Dept. Of Highway Patrol*, 882 So.2d 928, 938 (Fla. 2004)). The absence of a duty of care renders the defendant non-liable as a matter of law because his, her, or its actions are therefore non-tortious vis-a -vis the plaintiff. *Id.* at 1045 (citing *Kaisner v. Kolb*, 543 So.2d 732, 733-34 (Fla. 1989) (sovereign immunity does not even arise unless a governmental unit otherwise owes a duty of care to the injured party and would thus be liable in the absence of such immunity)).

Where such questions of duty arise in connection with potential law enforcement liability, the type of activities that are considered applicable are the enforcement of laws and the protection of the public safety. *Id.* at 1047 (citing *Trianon Park Condo. Assoc. v. City of Hialeah*, 468 So.2d 912 (Fla. 1985)). However, these activities are generally owed to the public at large; and a plaintiff must plead facts alleging that the governmental actor owed the alleged tort victim a "special duty of care." Stated another way, a plaintiff must plead exceptions to the "Public Duty Doctrine." *Id.*

At summary judgment, Plaintiff has failed to plead any exceptions to the "Public Duty Doctrine." Defendant HCSO believes that Plaintiff will continue to fail to show any evidence amounting to an exception to the "Public Duty Doctrine" if this matter proceeds to trial.

### B. Sovereign Immunity

If a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty. *Wallace v. Dean*, 3 So.3d 1035, 1053 (Fla. 2009) (citations omitted). Sovereign immunity rests on a **pure question of law**. *Beach Community Bank v. City of Freeport, Florida*, 150 So.3d 1111, 1113 (Fla. 2014) (emphasis added).

To answer the question of whether sovereign immunity bars a negligence action, it is

necessary to determine whether the negligence alleged by a plaintiff relates to a discretionary or operational function of government. *Id.* 150 So.3d at 1113-1114. Discretionary planning-level functions and decisions are immune, while operational functions or decisions are not immune. *Id.* 150 So.3d at 1114 (citing *Trianon Park Condo. Ass'n,* 468 So.2d at 924).

A "discretionary" planning-level function, involves an exercise of executive or legislative power such that a court's intervention by way of tort law would inappropriately entangle the courts in fundamental questions of policy and planning. *Id.* Certain policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability. *Wallace*, 3 So.3d at 1053 (citing *Commercial Carrier Corp.*, 371 So.2d at 1020). Immunity from suit applies when decisions concerning how resources are allocated, how laws are enforced, and how to protect the public involve matters usually protected from judicial interference. As a result, those are judgmental decisions for which the government is immune from liability. *Freeport*, 150 So.3d at 1114.

To assist in the determination of whether a challenged act involves the exercise of a discretionary planning function, the Florida Supreme Court has adopted the following four questions: (1) does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective; (2) is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective, as opposed to one that would not change the course or direction of the policy, program, or objective; (3) does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved; and (4) does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority to do or make the challenged act, omission, or decision. *Wallace*, 3 So.3d at 1053-54 (citing *Commercial Carrier Corp.*, 371 So.2d at 1018).

If all of these preliminary questions can be clearly and unequivocally answered in the affirmative/"yes", then the challenged act, omission or decision is discretionary in nature and thus immune from tort action. *Id.* at 1054. Although Defendant HCSO's Amended Dispositive Motion for Summary Judgment [Doc.226], Amended Supporting Memorandum of Law [Doc.227] and Reply [Doc.250] all remain pending, Defendant HCSO affirmative asserts that the answer to the four questions posed above are all a resounding "yes".

Moreover, deciding whether to take someone into **custody** is a **discretionary act** for which sovereign immunity has not been waived. *Dep't. of HRS v. Whaley*, 574 So.2d 100, 103 (Fla. 1991) (citing *Everton v. Willard*, 468 So.2d 936 (Fla. 1985)) (emphasis added). As a result, Defendant HCSO is immune from Plaintiff's claims asserted in Count I of his Third Amended Complaint as a matter of law. *If immunity is not granted at summary judgment, then this denial would be subject to immediate interlocutory appeal.*

### III.   Count IV - Violation of 42 U.S.C. §1983 against Defendant HCSO

42 U.S.C. §1983 is not self-executing; and it is not a source of substantive federal rights. *Cannon v. Taylor*, 782 F.2d 947, 949 (11th Cir. 1986); *Denico v. FSFA*, No. 8:12-CV-2933-T-33EAJ, 2013 WL 4848267, *3 (M.D. Fla. Sept. 10, 2013) (citing *Whiting v. Taylor*, 85 F.3d 581, 583 (11th Cir. 1996)). Instead, 42 U.S.C. §1983 provides a vehicle for the vindication of federal rights created elsewhere. *Id.* (citing *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617 (1979) (noting that one cannot go into court and claim a violation of section 1983 - for section 1983 by itself does not protect anyone against anything). Although the right to life is an interest of constitutional dimension, not every deprivation of life amounts to a constitutional violation and gives rise to a clam under 42 U.S.C. §1983. *Cannon*, 782 F.2d at 949.

In regard to a "custom and policy" argument, a plaintiff must show that a policy or custom of the defendant was the moving force behind the alleged constitutional deprivations. *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474 (11th Cir. 1991); *Engelleiter v. Brevard County Sheriff's Office,* 290 F.Supp.2d 1300 (M.D. Fla 2003). In order to demonstrate a policy or custom, a plaintiff must show a "persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). The deprivations that constitute "widespread abuse" sufficient to put a defendant on notice must be obvious, flagrant, rampant and of continued duration. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Therefore, a random or isolated incident is insufficient to establish a policy or custom. *Wideman v. Shallowford Co. Hosp., Inc.*, 826 F.2d 1030 (11th Cir. 1987); *Depew,* 787 F.2d 1496. As such, a plaintiff must specifically identify and present the custom or policy that caused the alleged injury. *Davis v. DeKalb County School District*, 233 F.3d 1367 (11th Cir. 2000).

Plaintiff continues to assert a "need for training" based on the "great likelihood of constitutional violations at Student Day 2014" [Doc.243, pg.35 & Doc.263, pg.4]. The United States Supreme Court has left open the possibility that a need to train could be "so obvious," as to allow for liability without a pattern of actual, prior constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). However, the only such hypothetical example provided in this narrow exception has arose in the context of the use of deadly force where firearms are provided to police officers. *Id.* at 390 n.10. Clearly, this case does not fit into that narrow hypothetical exception.

At summary judgment, Plaintiff has failed to show any custom or policy of Defendant HCSO which led to a constitutional deprivation towards AJ III's rights. Defendant HCSO believes that Plaintiff will continue to fail to show any such custom or policy if this matter proceeds to trial.

**IV.**    **Count V-VII - Violation of 42 U.S.C. §1983 against Deputy Defendants**

Plaintiff has failed to show that the temporary detention of AJ III to effect his trespass and ejection from the Fair event violated any of his constitutionally protected rights. Each Deputy Defendant had minimal contact with AJ III; wherein none of them used any force or threat of force, searched him, used any type of restraint on him or prevented him from using his cell phone.

### A.  Investigative Stop

The Supreme Court has adopted "a dual inquiry for evaluating the reasonableness of an investigative stop."  This dual inquiry requires answering the following two questions: (1) whether the officer's initial action was justified by reasonable suspicion; and (2) whether the stop matured into a de facto arrest because it was no longer reasonably related to the circumstances that created reasonable suspicion. *United States v. Acosta*, 363 F.3d 1141, 1144-45 (11th Cir. 2004). As a result, "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

Therefore, it is well-established under the Fourth Amendment that an officer may briefly detain and conduct a limited search of a person if the officer has, based on the totality of the circumstances, a "reasonable suspicion" that the person has engaged in, is engaged in or is about to engage in a crime.  *Acosta*, 363 F.3d at 1144-45. This temporary detention is deemed to be a less intrusive invasion of privacy than a formal arrest and, therefore, may be constitutionally accomplished merely on articulable or founded suspicion of criminal activity.  *Terry*, 392 U.S. at 21.

Furthermore, Florida law does not "limit investigatory stops to situations in which the officer

has a well-founded suspicion of an offense for which the officer could effect an immediate arrest." *Rodriguez v. State*, 29 So.3d 310, 313-4 (Fla. 2d DCA 2009). It is not necessary, therefore, that the officer involved "actually and subjectively had the pertinent reasonable suspicion." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008) (quoting *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006)).

The evidence in this matter will show that both the Florida State Fair Authority and HCSO reasonably found that running through the Midway during the extremely crowded Student Day event at the Fair amounted to disorderly conduct in accordance with §616.185 and/or §877.03, Fla. Stats. As a result, AJ III running through the crowded Midway up to the scene wherein his friends were involved in a physical altercation with HCSO Deputies lawfully allowed for a temporary detention to effect his trespass and ejection from the Fair event.

### B.  De Facto Arrest

The United States Supreme Court has acknowledged the difficulty in drawing a distinction between an investigative detention and a de facto arrest. *United States v. Sharpe*, 470 U.S. 675, 685 (1985) (quoting *Terry*, 392 U.S. at 20). As the Supreme Court instructs, a critical factor in determining the reasonableness of the detention is whether the law enforcement authorities "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Id.* at 686; *see also United States v. Place*, 462 U.S. 696, 702 (1983).

While the *Sharpe* Court declined to place a bright-line time limit on the investigative detention of persons or property, the Supreme Court made it clear that the detention should "last no longer than is necessary to effectuate the purpose of the stop." *Sharpe*, 470 U.S. at 684 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). As a result, the test is not one of "rigid time

limitations" or "bright-line rules," but of "common sense and ordinary human experience." *U.S. v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988) (quoting *Sharpe*, 470 U.S. at 685).

The evidence in this matter will show that both the Florida State Fair Authority and HCSO reasonably found that running through the extremely crowded Midway during the Student Day event at the Fair amounted to disorderly conduct in accordance with §616.185 and/or §877.03, Fla. Stat. As a result, AJ III running through the crowded Midway up to the scene wherein his friends were involved in a physical altercation with HCSO Deputies amounted to probable cause supporting the alleged de facto arrest.

### C. Qualified Immunity

This case presents a very unique set of facts and circumstances which should be a clear indication to this Honorable Court that Defendants' conduct did not violate any of AJ III's clearly established rights. *White v. Pauly*, 137 S.Ct. 548, 552 (2017). Plaintiff's burden of showing a clearly established right may not be discharged by referring to general rules and abstract rights, but must focus on the "actual, specific details of concrete cases." *Walker v. Schwalbe*, 112 F.3d 1127, 1132 (11th Cir. 1997) (citing *Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

The evidence in this matter shows a situation wherein teenagers were running through the extremely crowded Midway with no regard to other patrons. This was creating a cause for concern for everyone's safety wherein deputies had to begin removing people engaging in this behavior and trespassing/ejecting them from the Fair. One person engaging in this behavior was AJ III when he ran up to a scene wherein his friends were engaged in a physical altercation with deputies that escalated to a level where two of his friends (HA and AA) were ultimately arrested.

The assertion that Plaintiff makes that AJ III was simply attempting to return his friend's

baseball hat is of no consequence since "innocent behavior frequently will provide the basis for a showing of probable cause." *Illinois v. Gate*, 426 U.S. 213, 243 n.13 (1983). As a result, the Deputy Defendants trespassing and ejecting AJ III from the Fair event was done in accordance with §616.185, Fla. Stat. Therefore, Plaintiff has and will continue to fail to satisfy the first prong required to overcome Defendants' rightful entitlement to the protections and limitations afforded through qualified immunity. *Vinyard v. Wilson*, 311 F.3d at 1340, 1346 (11th Cir. 2002) (quoting *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)).

Even if Plaintiff shows a constitutional violation, the second prong requires Plaintiff to show that the right was clearly established on or prior to February 7, 2014. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Supreme Court has reiterated the long-standing principle that "clearly established law" should not be defined "at a high level of generality." *White*, 137 S.Ct. at 552 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, the clearly established law inquiry "must be particularized to the facts of the case." *Id.*

Plaintiff's assertion that the Deputy Defendants violated the mandates of §§985.101 and 985.115, Fla. Stats., [Doc.263, pp.7-8] does not amount to a clearly established constitutional violation because Florida state laws cannot grant constitutional protections. Additionally, Plaintiff's assertion that "the 4th Amendment was clearly established law on February 7, 2014, known to all but the plainly incompetent" [Doc.243, pg.42] does not satisfy his high burden at the second prong to overcome qualified immunity.

Since *White,* the Supreme Court has again stressed the need to "identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment." *District of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018) (quoting *White*, 137 S.Ct. at 552).

Therefore, this Honorable Court must determine whether the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that 'every reasonable official would have understood that what he is doing violates' the Constitutional right at issue." *Gates v. Khokhar*, 884 F.3d 1290, 1302 (11th Cir. 2018) (quoting *al-Kidd*, 563 U.S. at 741). Plaintiff has not and will not satisfy either prong necessary to overcome the Deputy Defendants rightful entitlement to the protections and limitations afforded through qualified immunity as raised at summary judgment [Docs. 226, 228, 247 & 250].

As a result, the Deputy Defendants are immune from Plaintiff's 42 U.S.C. §1983 claim asserted against each of them respectively in Counts V through VII of his Third Amended Complaint as a matter of law. If immunity is not granted at summary judgment, then these denials will be subject to immediate interlocutory appeal.

### **Future Briefing**

Defendants will seek leave of this Honorable Court to supplement this Trial Brief ahead of trial if this matter does not proceed to trial in November of 2019.

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that I electronically filed the foregoing with the Clerk of Court using

the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record on this

the 7th day of October, 2019.

 /s/ Jason G. Gordillo                                        
**Jason G. Gordillo, Esquire**, Attorney for Defendants
Florida Bar No.: 0399663
**Thea G. Clark, Esquire**, Attorney for Defendants
Florida Bar No.: 0127507
Hillsborough County Sheriff's Office
2008 East 8th Avenue
Post Office Box 3371
Tampa, Florida 33601
Telephone: 813.247.8102
Facsimile:  813.247.0941
Electronic Mail: jgordill@hcso.tampa.fl.us