## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANDREW JOSEPH, JR., as natural father, next friend and personal representative of the Estate of Andrew Joseph, III, deceased,

    Plaintiff,

v.

CHAD CHRONISTER, in his official capacity as the Sheriff of Hillsborough County, State of Florida; and Deputy Sheriff MARK CLARK, in his individual capacity.

    Defendants.

No. 8:16-CV-00274-MSS-CPT

## PLAINTIFF'S TRIAL BRIEF ON CERTAIN ISSUES

### I.    INTRODUCTION

On the evening of February 7, 2014, Defendants Sheriff of Hillsborough County Chad Chronister ("HCSO") and Deputy Sheriff Mark Clark illegally detained 14-year-old Andrew Joseph, III ("Andrew") during Student Day at the 2014 Florida State Fair. Defendants seized Andrew from the midway, detained him in a fenced-in processing area for over 40 minutes, ordered him into a windowless prisoner transport van, drove him to the edge of the fairgrounds property at night in an area with which he was unfamiliar, and ejected him without assistance or direction into a parking lot lit only by ambient light from the fair. Violating express statutory directives, Defendants did not contact Andrew's

parents or take any steps to ensure he was released from custody to his parents or another responsible adult.

Unfamiliar with the area and unsure of where to go, Andrew and his 12-year-old friend asked a sheriff's deputy near Gate 4, about 150 yards from where they had been ejected, for assistance getting to where they were supposed to meet their ride home. Rather than assist the boys, the deputy told them they were trespassing, he could arrest them, they could not go back through the fair to meet their ride home, and the only thing between them and where they wanted to go was Interstate 4.

After hearing the deputy's threat and misguided advice, Andrew and his friend proceeded to walk north on Orient Road—the only direction with a sidewalk—and then ran across Interstate 4. Once they reached the other side of the Interstate, the boys realized they still could not get to where they needed to be, and they decided to run back across. As they were doing so, Andrew was hit and killed by a vehicle. Plaintiff Andrew Joseph, Jr., contends HCSO is liable for Andrew's wrongful death and that Deputy Clark violated Andrew's constitutional rights.

This trial brief addresses three points. First, Defendants contend the parental notification and child release provisions of Florida Statutes Chapter 985 do not apply here at all because Andrew was not "taken into custody." This contention is directly contradicted by the plain language of the applicable statutes.

2

Second, Defendants seek to deflect fault from themselves to Andrew, arguing a 14-year-old abandoned in an unfamiliar unlit parking lot was responsible for his own death and should be attributed some measure of fault under Florida's comparative negligence statute. Florida law does not allow Defendants to avoid responsibility for violating statutes (Fla. Stat. §§ 985.101(3) and 985.115(2)(a)) intended to protect Andrew from precisely the kind of tragic events that occurred here. Instead, Florida law demands Defendants be barred from arguing Andrew's alleged comparative negligence.

Finally, the Court should adopt Plaintiff's Proposed Verdict Form, as it accurately maintains the distinction between damages for Plaintiff's claim under 42 U.S.C. § 1983 and the Florida Wrongful Death Act, and reject Defendants' Proposed Verdict Form, which ignores fundamental principles governing damages liability for those claims.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Defendants Were Required to Comply with the Requirements of Fla. Stat. §§ 985.101(3) and 985.115(2)(a)

It is undisputed Defendants did not attempt to contact Andrew's parents on the night of February 7, 2014, and did not release Andrew from custody to his parents or another responsible adult, as required by Fla. Stat. §§ 985.101(3) and 985.115(2)(a). Defendants argue they were not required to do so, and that the provisions of Fla. Stat. Ch. 985 generally did not apply, because Andrew was not arrested or taken into custody under one of the circumstances set forth in Fla. Stat.

3

§ 985.101(1). Defendants' argument is refuted by the plain language of the applicable statutes.

Fla. Stat. § 985.101(3) states, "the person taking the child into custody shall attempt to notify the parent, guardian, or legal custodian of the child [and] continue such attempt until the parent, guardian, or legal custodian of the child is notified …." Fla. Stat. § 985.115(2)(a) states, "a person taking a child into custody shall attempt to release the child … [t]o the child's parent, guardian, or legal custodian or, if the child's parent, guardian, or legal custodian is unavailable, unwilling, or unable to provide supervision for the child, to any responsible adult."[1] Fla. Stat. § 985.03(48) defines the term "taken into custody" "[a]s used in this chapter [985]" as "the status of a child immediately when temporary physical control over the child is attained by a person authorized by law, pending the child's release, detention, placement, or other disposition as authorized by law."

"Taken together, these Florida statutes … create a general duty on the part of law enforcement officers to notify the parent, guardian, or legal custodian of a child taken into custody, and to safely release a child who is in custody as directed." *Joseph v. Chronister*, No. 20-11073, 2021 WL 4739608, *8 (11th Cir. Oct. 12, 2021) (Jordan, J., concurring).[2]  Moreover, "the statutes do not speak of a child who is 'placed under arrest'[,] they speak of a child who is taken 'into custody,'" and "[t]he

---

[1] Fla. Stat. § 985.03(7) defines "child" as "any person under the age of 18 …." Defendants do not dispute Andrew was a "child" within the meaning of Ch. 985.

[2] As a concurring opinion, Judge Jordan's is not the holding of the court and not binding on this Court.  But his reasoning is thorough and his opinion offers sound guidance.

4

'in custody' analysis … focuses on how a reasonable person would have perceived the situation." *Id.* The evidence presented in this case establishes Defendants attained "temporary physical control over" Andrew, who reasonably could have perceived he was in custody, and that Defendants were therefore obliged to comply with the requirements of Fla. Stat. §§ 985.101(3) and 985.115(2)(a).

The evidence presented at trial establishes Clark seized Andrew on the midway and escorted him against his will to the fenced-in processing area, where he was surrounded by uniformed and armed deputies, he was photographed and searched, and a background check was run on him. Andrew was not free to refuse to go with the deputies from the midway to the processing area, and he was not free to leave the processing area. After being detained in the processing area for 40 minutes, HSCO deputies ordered Andrew into a windowless prisoner transport van, accompanied by two uniformed and armed deputies, from which he was not free to leave until the van reached the ejectment area far from the fairgrounds near Orient Road and Interstate 4. As Judge Jordan of the Eleventh Circuit stated in his concurring opinion in this case, "[i]f that is not custody, I don't know what is." *Joseph*, 2021 WL 4739608 at *8 (Jordan, J., concurring). This Court likewise held in its summary judgment order that Defendants' duties under Fla. Stat. §§ 985.101(3) and 985.115(2)(a) "were triggered" because deputies took "temporary physical control over Andrew." Doc. 283 at 17-18, 19.

Defendants argue Andrew was not "taken into custody" because his seizure and detention did not constitute one of the four circumstances under which a child

5

may be taken into custody set forth in Fla. Stat. § 985.101(1).  Defendants' argument effectively seeks to rewrite § 985.101(1) – which begins "[a] child may be taken into custody under the following circumstances" – to state "[a] child may be taken into custody ***only*** under the following circumstances".  The court in *D.M. v. Dobuler*, 947 So. 2d 504 (Fla. 3d DCA 2006), however, held a child is "in custody" the minute a child is "physically detained by law enforcement," never suggesting any statutory protections do not apply to those children, like Andrew, who are unfortunate enough to be seized unlawfully.  *See* 947 So. 2d at 507.

Thus, this Court cannot look solely to Fla. Stat. § 985.101(1) to determine whether Andrew was taken into custody for purposes of §§ 985.101(3) and 985.115(2)(a) – it must consider the definition in Fla. Stat. § 985.03(48). This Court recognized this in holding § 985.101(1) "does not define the only circumstances in which law enforcement's encounter with a child can be considered taking the child into custody pursuant to Chapter 985" and that the definition of "taken into custody" set forth in Fla. Stat. § 985.03(48) controls here. Doc. 283 at 17.

> [T]he facts of the instant case support a finding that law enforcement took at least temporary physical control over Andrew when they removed him from the Midway, held him in the Processing Area where he was not free to leave for approximately 40 minutes while they ran a warrant search, questioned him, and photographed him, and then transported him involuntarily on an HCSO transport van under the authority of two sheriff's officers (one on duty and one off-duty) from the Processing Area to the Ejectment Location outside of the Fair.

*Id*. at 17-18.  The evidence presented at trial reinforces the Court's conclusion in its summary judgment order.

6

Whether Andrew was arrested[3] (which he was for the Fourth Amendment analysis) is irrelevant for the custody analysis under the wrongful death statute. Indeed, Defendants' argument that the requirements of Fla. Stat. §§ 985.101(3) and 985.115(2)(a) only apply when a child is arrested is negated by Fla. Stat. § 985.101(4), which states "[t]aking a child into custody is not an arrest …." Long ago, Florida's Attorney General issued an opinion likewise concluding that taking a child into custody within the meaning of the predecessor to Ch. 985 did not equate to an arrest. *See* Fla. AGO 051-191 (July 2, 1951). In other words, parents must be notified, and a child must be released to his parent, not just when the child is arrested but anytime a child is "physically detained by law enforcement." *D.M.*, 947 So. 2d at 507.

The clear legislative intent of sections 985.101(3) and 985.115(2)(a) was "to give parents notice of the whereabouts of their children." *Brookins v. State*, 704 So. 2d 576, 578 (Fla. 1st DCA 1997). Defendants' violations of those statutes deprived Andrew's parents of their right to notice of the whereabouts of their 14-year-old child. The evidence demonstrates Defendants owed statutory duties of care to Andrew, Defendants breached those duties, and Defendants' breaches caused Andrew's death.

> B. <u>Defendants' Violations of Fla. Stat. §§ 985.101(3) and 985.115(2)(a) Bar Their Comparative Fault Argument and Jury Instructions</u>

---

[3] "Arrest" is used differently in the constitutional context.

Defendants' violations of Fla. Stat. §§ 985.101(3) and 985.115(2)(a) constitute "negligence per se," establishing their liability in this case. Defendants' violations also bar them from arguing, and from requesting jury instructions, that Andrew's own negligence contributed to his death.

Florida courts have held a "violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury [like strict liability statutes] constitutes negligence per se." *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015) (citing cases). Indeed, "[t]he stated public policy underlying Chapter 985 is to protect children involved in the juvenile justice system, and to insure their care, safety, treatment, education and rehabilitation" *V.K.E. v. State,* 934 So. 2d 1276, 1281 (Fla. 2006). Thus, Chapter 985 is expressly designed to protect a particular class of persons (minors) from the injuries of extended detention without parental notification or return to parental custody. All evidence at trial has shown Defendants did not comply with the relevant provisions of Chapter 985 and are thus negligent per se and liable for Andrew's death and Plaintiff's injuries. It is inconsistent with both the purpose of Chapter 985 and Defendants' per se liability for its violation to hold Andrew in any way responsible.

Under Florida law, "[i]n a negligence action, contributory fault charged to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." Fla. Stat. § 768.81(2). The Florida Supreme

8

Court recognized long ago, however, that, "[i]f the defendant's negligence consists in the violation of a statute intended to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence from recovery for bodily harm caused by the violation of such statutes." *Tamiami Gun Shop v. Klein*, 116 So. 2d 421, 423-34 (Fla. 1959). Statutes falling within this category include statutes designed to protect minors. *See Bartsch*, 170 So. 3d at 86; *see also Hurd v. Munford, Inc.*, 378 So. 2d 86, 89 (Fla. 1st DCA 1979) (Ervin, J., concurring) (noting the category of statutes is "basically limited to those protecting minors and other incompetents"). The reasoning behind the rule is simple: where a "statute is intended for the protection of a class of persons from a harm which they are not capable of recognizing, … the purpose would be defeated if negligence of a member of the class were permitted to bar him from recovery." *Bass v. Flowers*, 177 So. 2d 239, 242 (Fla. 1st DCA 1965).

*Booth v. Abbey Road Beef & Booze, Inc.*, 532 So. 2d 1288 (Fla. 4th DCA 1988),[4] provides a useful analogy. There, the minor plaintiff was injured in a vehicle accident when she was the passenger in a vehicle driven by a juvenile to whom the defendant had sold alcohol in violation of Florida's dram shop act. *See id.* at 1289; *see also* Fla. Stat. § 562.11. At trial, the court gave the jury an instruction on the plaintiff's comparative negligence. *Id.* at 1290. The appellate

---

[4] *Booth* was disapproved on grounds not relevant here by *Bulldog Leasing Co. v. Curtis*, 630 So. 2d 1060 (Fla. 1994).

9

court held giving that instruction was error. The court noted "the dram shop act … is meant to protect a class of persons, primarily juveniles who would buy alcoholic drinks," and "a minor's decision to ride with an alcohol-impaired minor is one of the results the statute is meant to prevent." *Id*. Accordingly, the plaintiff could not "be deemed guilty of comparative negligence," and the trial court erred by reducing the verdict "on account of contributory negligence." *Id*.

The situation in this case compels the same result. Fla. Stat. § 985.101(3) requires "[a] person taking [a] child into custody" to notify the child's parent, and Fla. Stat. § 985.115(2)(a) requires a child be released from custody to his parent or another responsible adult. Like the dram shop act, these statutes are intended to protect children, like Andrew, who are not capable of recognizing the potential harm and not competent to make decisions for their own self-protection. *See Joseph*, 2021 WL 4739608 at *7 (Jordan, J., concurring) ("[Sections 985.101(3) and 9851.115(2)] set out detailed and mandatory instructions for what officers are to do (in terms of notification and release) when a child is taken into custody to make sure that the child is safe and returned to the adults who care for him."). It is entirely foreseeable that failing to comply with these statutes—particularly the release-from-custody requirement of § 985.115—would result in precisely the tragic events that occurred in this case.

Defendants did not fulfill their statutory duties. They did not contact Andrew's parents when he was detained, and they did not ensure Andrew was released into the custody of his parents or another responsible adult. To the

10

contrary, Defendants abandoned Andrew at night in an unlit parking lot, told him he could not stay where he was or he would be arrested, and that the only thing between him and where he wanted to go was the interstate. Because Defendants violated statutory duties intended to protect Andrew, a minor incapable of his own self-protection, Defendants cannot argue Andrew's alleged comparative negligence reduces their liability. Rather, Defendants are per se liable liable for Andrew's death.

    C.    <u>Plaintiff's Proposed Verdict Form Properly Reflects the Law Governing Damages</u>

Plaintiff's Proposed Verdict Form correctly reflects the law governing the interplay of a 42 U.S.C. § 1983 claim where the constitutional violation resulted in death and a claim arising under the Florida Wrongful Death Act. Plaintiff's Proposed Verdict Form takes account of the following: (1) damages arising from these claims are the same (other than the hedonic damages of Andrew Joseph, III); (2) there cannot be double recovery for the same damages brought under separate claims; (3) 42 U.S.C. § 1983 damages are joint and several; (4) wrongful death claims are subject to apportionment; (4) Defendant Clark is responsible for the 42 U.S.C. § 1983 claim; (5) Defendant HCSO is responsible for the wrongful death claim; and (6) HCSO has never suggested Clark is responsible for Andrew's death.

Plaintiff's Proposed Verdict Form reflects one measure of damages, so there is no duplication. It further shows Clark will be responsible for these damages (without apportionment) if the jury finds in favor of Plaintiff as to his 42 U.S.C. § 1983 constitutional claim. HCSO will be responsible for the wrongful death claim

11

damages (subject to reduction for any comparative negligence of Andrew Joseph, III if the Court allows it). Plaintiff can then collect damages against HCSO if he chooses for the wrongful death claim. Plaintiff could also collect all his damages against Clark for the constitutional claim. Under Plaintiff's proposal, HCSO would be entitled to its statutory damages cap, and collection of damages from either Defendant would reduce the amount recoverable against the other.

In contrast to Plaintiff's Proposed Verdict Form, Defendant's Proposed Verdict Form completely ignores some of the fundamental principles set forth above. In particular, (1) it attempts to make the 42 U.S.C. § 1983 damages subject to apportionment, and (2) it attempts to apportion fault on the wrongful death claim to Clark despite HCSO having never suggested Clark is responsible for Andrew's death. Neither of these is proper.

Under 42 U.S.C. § 1983, damages liability is joint and several. *See Finch v. City of Vernon*, 877 F.2d 1497, 1503 (11th Cir. 1989) (holding "the district court … correctly held the City jointly and severally liable for the damages" awarded in plaintiff's § 1983 action); *see also Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 314 (7th Cir. 2010) (holding parties in plaintiff's § 1983 action "jointly and severally liable for the entire award"); *Forsyth v. City of Dallas*, 91 F.3d 769, 775–76 (5th Cir. 1996) (affirming district court's holding city and officers jointly and severally liable under § 1983); *Weeks v. Chaboudy*, 984 F.2d 185, 189 (6th Cir. 1993) (holding defendants are jointly and severally liable for any judgment in § 1983 actions); *Wright v. Watson*, No. 4:15-CV-34, 2017 WL 4126981, *2 (M.D. Ga.

Sept. 18, 2017) ("the Eleventh Circuit and its predecessors have found that joint and several liability applies in § 1983 damages actions") (citing *Finch*, 877 F.2d at 1503). Thus, Plaintiff can collect the entirety of the 42 U.S.C. § 1983 damages against Clark without any apportionment whatsoever. Clark is the only 42 U.S.C. § 1983 defendant left and thus is solely responsible for the damages caused by his violation of Andrew's constitutional rights.

In contrast, under Florida law, liability for wrongful death claims based on negligence is determined by apportionment, requiring allocation of each negligent party's respective percentage of fault. *See* Fla. Stat. § 768.81(3). This Court and Florida state courts have clarified this is the case notwithstanding Fla. Stat. § 768.31(2)(a), which provides for joint and several liability for wrongful death claims generally:

> § 768.31(2)(a) provides that "when two or more persons become jointly or severally liable in tort ... for the same wrongful death, there is a right of contribution among them ...." With respect to negligence actions specifically, however, Florida's comparative fault statute states that "[i]n a negligence action, the court **shall** enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability."

*Maguire v. Demos*, No. 2:10-CV-782-FTM-3DNF, 2012 WL 859605, *2 (M.D. Fla. Mar. 12, 2012) (emphasis added) (quoting Fla. Stat. §§ 768.31(2)(a), 768.81(3)); *see also Brown v. Bottling Group LLC*, No. 8:15-CV-325-T-23TGW, 2016 WL 3883192, *3 (M.D. Fla. July 18, 2016) ("Section 768.81(3) abolishes joint and several liability in a 'negligence action'" and requires courts to enter judgment "against each party liable on the basis of such party's percentage of fault."); *Snoozy*

13

*v. U.S. Gypsum Co.*, 695 So. 2d 767, 769 (Fla. 3rd DCA 1997) (holding, in negligence-based wrongful death case in asbestos context, jury should be instructed to apportion liability among defendants it found liable on the basis of each defendant's percentage of fault, pursuant to § 768.81(3)). HCSO has never attempted to apportion its wrongful death liability with Defendant Clark.

"The district court holds 'complete discretion' over the use of a special or general verdict, including 'the form of the verdict.'" *French v. City of Los Angeles*, No. ED CV 20-00416, 2022 WL 2189649, *13 (C.D. Cal. May 10, 2022) (quoting *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1476 (9th Cir. 1995)). In *Salvato v. Blair*, No. 5:12-CV-635-OC-10, 2014 WL 12639958 (M.D. Fla. June 30, 2014), for instance, this Court held a post-verdict hearing to determine the form of the judgment to be entered after the jury determined (1) the defendant deputies' and sheriff's liability under § 1983 and state law wrongful death claims for the shooting death of the victim, and (2) the full amount of damages to be awarded to the victim's parents. In so doing, the Court considered the "interaction of state and federal laws" regarding these separate claims. *Id.* at *2. The jury had awarded total damages in the amount of $2,263,014 and indicated how much of that amount should be awarded to the victim's father, to the victim's mother, and for funeral expenses. These are the same damages (in addition to Andrew Joseph, III's damages) at issue here. The Court then determined the proper form of the judgment based on the jury's findings as to liability and the damage award.

As to the defendant sheriff in that case—whom the jury found liable on the § 1983 excessive force claim for ratifying the shooting deputy's conduct and vicariously liable on the wrongful death claim—the Court entered judgment on the wrongful death claim "in the aggregate amount of $300,000 [the statutory cap under Florida Statute § 768.28(5)] prorated between the individual survivors according to the ratio of the Jury's verdict," and on the § 1983 claim "in the aggregate amount of $2,263,014 ($1,375,000 for the benefit of [the victim's father]; $880,000 for the benefit of [the victim's mother]; and $8,014 for the funeral expenses of [the victim])." *Id.* at *3–4. To avoid the risk of double recovery, the Court specially noted the judgment would be entered to "reflect that the sums awarded for the claim or claims brought under 42 U.S.C. § 1983 are inclusive of the sum awarded in favor of the Plaintiff and against the Sheriff on the Plaintiff's state law claim under the Florida Wrongful Death Act." *Id.* at *4. The Court made clear "***there shall be no double recovery***; any sum paid to or collected by the Plaintiff under either judgment shall be credited in reduction of both." *Id.* (emphasis added). This is exactly what Plaintiff proposes here.

Similarly in *French*, the court held a special verdict form that permitted the jury to make only one damage award was appropriate because there was only one injury requiring compensation, even though the plaintiffs asserted separate federal and state law claims, including claims under § 1983 and state wrongful death law. The *French* court emphasized "'[d]amages are not assessed "by defendant" or "by claim" but [rather] "for" an injury[;]'" therefore, "a verdict form need not allocate

15

damages between the separate claims when a plaintiff suffered 'a single, indivisible injury' from 'a continuous course of action.'" 2022 WL 2189649 at *14 (quoting *Archibald v. County of San Bernardino*, No. ED CV 16-01128, 2018 WL 6017032, *9 (C.D. Cal. Oct. 2, 2018)). Indeed, the court reasoned, to allow the jury to allocate damages for a single injury between separate claims would invite error, confusion, and the risk of double recovery:

> Plaintiffs suffered a single, indivisible injury from [the defendant officer]'s conduct: the same facts presented to the jury supported a finding of damages under either the state law claims or Section 1983 claim. Accordingly, the special verdict form adequately allowed the jury to determine damages ***on the relevant injury***. ... Indeed, a special verdict form that required specific damages allocations for the state law and Section 1983 claims carried the risk of greater jury confusion and double recovery.

*Id.* (emphasis added).

In contrast, Defendants' Proposed Verdict Form seeks to "attribute" indivisible damages between Defendant Clark and HCSO, even though Clark is fully responsible for the entirety of any 42 U.S.C. § 1983 judgment and even though HCSO is the sole defendant responsible for the wrongful death claim. Defendants' Proposed Verdict Form apportions damages in a manner the law does not permit.

### III. CONCLUSION

For the reasons set forth above, Plaintiff requests the Court to instruct the jury on Defendants' statutory duties under Chapter 985, bar Defendants' argument and proposed jury instructions concerning Andrew's alleged comparative negligence, and adopt Plaintiff's Proposed Verdict Form.

Respectfully submitted this 20th day of September, 2022.

/s/ *Christopher S. Anulewicz*
Christopher S. Anulewicz, Esq.
Georgia Bar No. 020914
*Admitted Pro Hac Vice*
Patrick Silloway, Esq.
Georgia Bar No. 971966
*Admitted Pro Hac Vice*
BALCH & BINGHAM, LLP
30 Ivan Allen, Jr. Blvd., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
canulewicz@balch.com
psilloway@balch.com

Guy B. Rubin, Esq. (FBN 691305)
Todd M. Norbraten, Esq. (FBN 56605)
RUBIN & RUBIN
2055 S. Kanner Hwy.
Stuart, FL 34994
(772) 283-2004
(772) 283-2009 Facsimile
grubin@rubinandrubin.com
tnorbraten@rubinandrubin.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the 20th day of September, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

            */s/ Christopher S. Anulewicz*
            Christopher S. Anulewicz, Esq.
            Georgia Bar No. 020914
            *Admitted Pro Hac Vice*
            Patrick Silloway, Esq.
            Georgia Bar No. 971966
            *Admitted Pro Hac Vice*
            BALCH & BINGHAM, LLP
            30 Ivan Allen, Jr. Blvd., Suite 700
            Atlanta, Georgia 30308
            Telephone: (404) 261-6020
            Facsimile: (404) 261-3656
            canulewicz@balch.com
            psilloway@balch.com

## **SERVICE LIST**

*Andrew Joseph, Jr., as Personal Representative of the Estate of Andrew Joseph, III*
*v.*
*CHAD CHRONISTER, in his official capacity as the Sheriff of Hillsborough County, et al.*

CASE NO: 8:16-CV-00274-MSS-CPT

United States District Court, Middle District of Florida, Tampa Division

*****************************

Christopher E. Brown, Esq.
April S. Kirsheman, Esq.
Hillsborough County Sheriff's Office
2008 E. 8th Ave.
P.O. Box 3371
Tampa, FL 33601
chrisbro@teamhcso.com
akirsheman@teamhcso.com

Robert M. Fulton, Esq.
Robert A. Shimberg, Esq.
Hill Ward & Henderson, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, FL 3361-2231
Bob.fulton@hwhlaw.com
robert.shimberg@hwhlaw.com

***Attorneys for Defendants Sheriff Chad Chronister and Deputy Sheriff Mark Clark***