UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW JOSEPH, JR., as natural
father, next friend and personal
representative of the Estate of Andrew
Joseph, III deceased,

    Plaintiff,

v.    Case No: 8:16-cv-274-MSS-CPT

CHAD CHRONISTER, MARK
CLARK, in his individual capacity,

    Defendants.

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Brief in Support of Motion for Judgment as a Matter of Law and Motion for a New Trial, (Dkt. 443), Defendant Mark Clark's response in opposition thereto, (Dkt. 447), Plaintiff's reply, (Dkt. 450), and Defendant's Motion for leave to file a sur-reply. (Dkt. 451) Upon review and consideration of the foregoing, the Court hereby **ORDERS** that the Motion for Judgment as a Matter of Law and Motion for a New Trial, (Dkt. 443), are **DENIED.** Defendant's Motion for leave to file a sur-reply, (Dkt. 451), is **DENIED**.

    I.    BACKGROUND

Andrew Joseph, Jr. ("Plaintiff") initiated this action as the natural father, next friend, and personal representative of his son Andrew Joseph III's estate, seeking

damages for Andrew's death, which occurred after he was ejected from the Florida State Fair ("Fair") on February 7, 2014. (Dkt. 1) In the operative complaint, Plaintiff alleged a state wrongful death cause of action against Hillsborough County Sheriff Chad Chronister ("Count I"), a state wrongful death cause of action against the Florida State Fair Authority ("FSFA") for vicarious liability ("Count II"), a state wrongful death cause of action against the FSFA for direct liability ("Count III"), a deprivation of civil rights cause of action against Sheriff Chronister in his official capacity under 42 U.S.C. § 1983 ("Count IV"), and claims against Corporal Mark Clark and Deputies Stephen Jones and Henry Echenique in their individual capacities for violation of Andrew's civil rights under 42 U.S.C. § 1983 ("Counts V–VII"). (Dkt. 143)

Prior to trial, the Court entered an Order granting summary judgment as to Counts IV, V, and VII, the Section 1983 claims against Sheriff Chronister in his official capacity and Deputies Echenique and Jones in their individual capacities. (Dkt. 283) The Court denied summary judgment as to all other claims. (Dkts. 283, 284)

On September 9, 2022, Plaintiff settled his claims against the FSFA. (Dkt. 393) From September 12, 2022 through September 22, 2022 the Court held trial on Counts I and VI, the wrongful death claim against Sheriff Chronister and the Section 1983 claim against Corporal Clark. At the close of Defendants' evidence, Plaintiff moved for judgment as a matter of law on five issues. (Dkt. 429; Dkt. 459 at 83:18–21) In particular, as to the claim against Clark, Plaintiff argued no reasonable jury, based on the evidence introduced at trial, could conclude Clark had probable cause to seize

Andrew at the Fair. (Dkt. 459 at 86:18–88:6) The Court resolved the other issues but held Plaintiff's oral motion on the issue of probable cause in abeyance pending the jury's verdict. (Id. at 116:7-9) On September 22, 2022, the jury returned its verdict in favor of Clark on the Section 1983 claim. (Dkt. 438) Specifically, the jury answered "no" to the question of whether Clark intentionally committed acts that violated Andrew Joseph, III's right to be free from an unconstitutional seizure. (Id.) Upon receiving the verdict, Plaintiff stated his intent to renew his motion for judgment as a matter of law on the issue of probable cause, and the Court directed Plaintiff to file a Motion and brief the issue within fourteen days. (Dkt. 441)

In the renewed Motion, Plaintiff contends again that the evidence and testimony presented at trial conclusively refutes the existence of probable cause to detain Andrew at the Fair. (Dkt. 443) Thus, Plaintiff contends that, pursuant to Rule 50 of the Federal Rules of Civil Procedure, he is entitled to judgment as a matter of law that Clark lacked probable cause to seize and detain Andrew and, therefore, did so in violation of Andrew's Fourth Amendment rights. (Id. at 4) Additionally, if and when the Court orders judgment as a matter of law as demanded, Plaintiff requests a new trial on the issues remaining as to his Section 1983 claim against Clark. (Id.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > (A) resolve the issue against the party; and

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). Rule 50 of the Federal Rules of Civil Procedure provides that a court should grant judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of one party on a particular issue. Fed. R. Civ. P. 50(a). In considering a motion for judgment as a matter of law, all reasonable inferences must be drawn in favor of the nonmoving party. Gowski v. Peake, 682 F.3d 1299, 1310-1311 (11th Cir. 2012). The Court is not permitted to substitute its own judgment about "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," as those are the functions of the jury. Id. (quoting Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150 (2000)). Therefore, "judgment as a matter of law is appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1246 (11th Cir. 2001). "If there is substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied." Christopher v. Florida, 449 F.3d 1360, 1364 (11th Cir. 2006) (internal citations and quotation marks omitted).

Rule 50(b) provides that, "[n]o later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as

a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 59(b). It is well-settled that "[f]or a court to be obligated to consider a post-trial motion for judgment as a matter of law, the moving party must have made a motion for such a judgment under Rule 50(a) at the close of all the evidence." Aerospace Marketing, Inc. v. Ballistic Recovery Systems, Inc., 2005 WL 2290252, *1 (M.D. Fla. Sept. 19, 2005) (Steele, J.) (citing Blasland, Bouck & Lee, Inc. v. City of North Miami, 283 F.3d 1286, 1300 (11th Cir. 2002)).  Additionally, "[b]ecause the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." Connelly v. Metropolitan Atlanta Rapid Transit Authority, 764 F.3d 1358, 1363-1364 (11th Cir. 2014).  "The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the presubmission motion under 50(a)." McGinnis v. American Home Mortgage Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016) (punctuation omitted) (quoting Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007)).

Pursuant to Rule 59(a), a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Recognized grounds for a new trial include: the verdict was against the clear weight of the evidence, the damages were excessive, there were substantial errors in admission or rejection of evidence or instructions to the jury, or the trial was otherwise not fair to the moving party." See Cornish ex rel. St. Paul Fire & Marine Ins. Co. v. Renaissance Hotel Operating Co., 2008 WL 1743861, *1 (M.D.

Fla. 2008) (citing Steger v. Gen. Elec. Co., 318 F.3d 1066, 1081 (11th Cir. 2003)). "Because it is critical that a judge does not merely substitute his [or her] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation omitted).

### III. DISCUSSION

Against Rule 50's high standard, Plaintiff asserts that he is entitled to judgment as a matter of law because the jury's verdict that Clark did not intentionally violate Andrew's right to be free from an unconstitutional seizure was contrary to the evidence presented at trial. (Dkt. 443 at 5–7) Specifically, Plaintiff contends that to reach its verdict, the jury must necessarily have found that Clark had probable cause to seize and detain Andrew on the Midway at the Fair.[1] (Id.) Plaintiff argues that the evidence at trial was insufficient to support the jury's finding in this regard. (Id.) Plaintiff's argument is principally based on the fact that Clark has no recollection of Andrew or anything he did at the Fair on February 7, 2014 that would justify the seizure. (Id.)

To succeed at trial, Plaintiff had the burden of proving, by a preponderance of the evidence, *the absence* of probable cause to detain Andrew. Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998). Importantly, it was not the burden of the Defendant

---

[1] The Court notes that no special interrogatories were propounded on the jury—thus, the assumption by Plaintiff in this motion is that the jury resolved the matter on the issue of probable cause. Because the question of whether Clark had probable cause to seize Andrew is the only challenge that is raised in the Motion for Judgment as a Matter of Law, it is the only issue the Court addresses.

to prove the existence of probable cause. "[P]robable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" Washington v. Howard, 25 F.4th 891, 898 (11th Cir. 2022) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018)). "Probable cause does not require conclusive evidence and 'is not a high bar.'" Id. (quoting Wesby, 138 S. Ct. 586). The probable-cause standard simply asks "whether a reasonable officer *could* conclude . . . that there was a substantial chance of criminal activity." Id. (quoting Wesby, 138 S. Ct. 586) (emphasis and alteration in original). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983); see also Glenn v. Lanier, 2010 WL 1380164, at *9 (M.D. Fla. 2010) ("Circumstantial evidence, inferences, and common-sensical interpretations of facts can lead to probable cause as long as an officer's conclusions are reasonable under the circumstances."). Thus, "innocent behavior frequently will provide the basis for a showing of probable cause . . . ." Gates, 462 U.S. at 245 n.13. Moreover, probable cause is an objective inquiry, and an individual officer's subjective intent or state of mind is irrelevant to the probable cause analysis. Nieves v. Bartlett, 139 S. Ct. 1715, 1725 (2019).

Defendant Clark, through counsel,[2] maintained throughout trial that he had probable cause to believe that Andrew was trespassing upon the grounds of the Fair

---

[2] Importantly, Clark could not so claim because he had no recollection of encountering Andrew at all.

pursuant to Fla. Stat. § 616.185, which reads, in pertinent part, as follows:

> (1) For the purposes of this chapter, trespass upon the grounds of the Florida State Fair Authority or any other fair association permitted under s. 616.15 means:
> (a) Entering and remaining upon any grounds or facilities owned, operated, or controlled by the Florida State Fair Authority or any other association permitted under s. 616.15 *and committing any act that disrupts the orderly conduct* of any authorized activity of the fair association in charge, or its lessees, licensees, or the general public on those grounds or facilities;
>
> . . .
>
> (2) Any person committing the offense of trespass upon the grounds of the Florida State Fair Authority or any other fair association permitted under s. 616.15 commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
>
> (3) A law enforcement officer may arrest any person on or off the premises, without a warrant, if the officer has probable cause for believing such person has committed the offense of trespass upon the grounds of the Florida State Fair Authority or any fair association permitted under s. 616.15. Such an arrest does not render the law enforcement officer criminally or civilly liable for false arrest, false imprisonment, or unlawful detention.

Fla. Stat. § 616.185 (emphasis added).

Here, the jury's finding that Plaintiff failed to prove the absence of probable cause is supported by the evidence adduced at trial. Of course, Clark's unexplained amnesia on the matter somewhat complicated the issue. Plaintiff suggests that Clark's inability to recall any conduct by Andrew that could factually support a probable cause determination establishes that probable cause was lacking. (Dkt. 443 at 7–10; Dkt. 450 at 5) However, despite Clark's lapse in memory, other circumstantial evidence was presented at trial by both parties that could have supported the jury's finding by

preponderance of the evidence that Clark had probable cause seize Andrew on the Midway for a suspected violation of Fla. Stat. § 616.185.

First, the jury's verdict is supported by Andrew's ejection form. This document was introduced by Plaintiff at trial, without limitation[3], and was relied upon heavily by Plaintiff in his case in chief. (Dkt. 453 at 99:25–96:10; Dkt. 439-14) The ejection form, which was completed by Deputy Echenique, memorialized the reason for Andrew's ejection from the Fair: "Running through the midway causing disorderly conduct." (Dkt. 439-14) Although Clark did not independently remember witnessing Andrew or his conduct on the Midway, Deputy Echenique testified that Clark told him what to write on the form. (Dkt. 453 at 172:10–173:6, 178:8–11) Again, this testimony was not challenged as impermissible hearsay. A reasonable inference, which must be drawn in Clark's favor for purposes of resolving this Motion, is that what Clark told Echenique to write on the form is what Clark saw. Contrary to Plaintiff's argument, Clark's subsequent lack of memory of the event does not conclusively prove that he did not see this behavior occur.

Moreover, there was additional evidence corroborating that the conduct described in the ejection form was more likely than not what Clark witnessed on the Midway. Jordan Porrino stated in her deposition testimony, which was read to the jury, that she saw Andrew following two other fairgoers, Jalen Harrison and Hassan

---

[3] Plaintiff waived any possible hearsay objection to the form by not raising it at trial. The Federal Rules of Evidence are clear that the failure to object to the admission of evidence constitutes a waiver of the objection. Fed. R. Evid. 103(a)(1); see also United States v. Maddox, 492 F.2d 104, 107 (5th Cir. 1974) ("A rule of evidence not invoked is waived.").

Abdullah, after they "had gotten into something with some people and the deputies were taking them away." (Dkt. 458 at 122:9–15.) Porrino testified:

> We were talking, then Jalen and Hassan were getting taken away by the deputies, they were all like handcuffed and stuff, and he was like, what's going on, what's going on, and then we started following them, but then like, I don't know, they were going too fast, and then Andrew started running after them with his friends, and I was like, well, I'm not going to do that, so I turned around.

(Id. at 125:24–126:5) She testified that at the same time that this was occurring, the Fair was very crowded, and a fight had just broken out on the Midway between some other boys. (Id. at 126:23–127:7) When asked to confirm that Andrew was running and not walking after Jalen and Hassan, Porrino testified:

> A: Yeah, he was running after them.
> Q: It wasn't a fast walk?
> A: No. He was running.
> Q: It wasn't a walk, he was running?
> A: He was running.

(Id. at 133:20-24.)

Corey Thornton, one of Andrew's companions at the Fair, testified that he was with Andrew when they were both detained. (Dkt. 456 at 82:15–85:13) Thornton testified that he and Andrew *walked* towards the fairgoers who were being arrested to return a hat that Andrew believed belonged to one of them, when he and Andrew were "grabbed" by two other officers. (Id.)

However, Sergeant Bell testified that he was the officer who detained Thornton, and Thornton was running with a crowd of 30 to 40 individuals at the time he was stopped. (Dkt. 458 at 40:25–41:17; 66:23–67:4) Because Thornton testified he was with

Andrew at the time of their detention, and because Bell testified he saw Thornton running with a crowd at the time he was stopped, the jury could have reasonably inferred that Andrew was one of the individuals running with Thornton, even though Bell did not specifically recall seeing Andrew.

The jury was free to believe the version of events recounted by Porrino. Even if Andrew was innocently running to pick up a hat or running towards law enforcement to ensure his friends' safety, probable cause could have been found. As explained above, "innocent behavior frequently will provide the basis for a showing of probable cause . . . ." Gates, 462 U.S. at 245 n.13. The jury was also free to accept Bell's version of events. As stated above, in ruling on this Motion, the Court cannot make credibility determinations or reweigh the evidence. See Reeves, 530 U.S. at 135 ("[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.").

Concerning whether any running would have been sufficient to support a perception of disorderly conduct, numerous witnesses testified regarding the large crowds and general chaos on the Midway that night. (Dkt. 453 at 138:10–139:3, 189:11–13; Dkt. 458 at 36:4–18, 118:2–20; Dkt. 457 at 46:25–47:15; Dkt. 456 at 180:8–11) Clark confirmed that trial exhibits depicting heavy crowds on the Midway were accurate representations of what the Midway looked like the evening of February 7, 2014. (Dkt. 453 at 139:5–18, 140: 7–25) Moreover, multiple witnesses testified that running on the Midway on the evening of February 7, 2014 would have been disruptive to the orderly conduct of the Fair under the circumstances. Sergeant Bell

testified that running on the Midway affected the safety and security of the Fair because, based on the size of the crowds, "[t]here's not really much room to run, and you're going to, you know, strike people as you're running." (Dkt. 458 at 44:11–15) Bell testified that his reason for stopping Thornton specifically for running was because "it is a disorderly breach of the peace, where it affects other, you know, innocent patrons on the midway." (Dkt 458 at 59:15–18) He also testified that under certain circumstances, running "fit[s] the criteria of disorderly conduct." (Id. at 63:24–64:11) Defendants' expert, Ken Katsaris, agreed that running at night on a crowded Midway toward officers engaged with others constituted disorderly conduct for purposes of § 616.185. (Dkt. 459 at 27:6–24; 53:15–55:13) Clark also testified that running could constitute disorderly conduct "[u]nder certain circumstances." (Dkt. 453 at 130:3–4)

In summary, whether or not all would agree as to what occurred on the night in question, the Court is compelled to find, construing the evidence in the light most favorable to Clark, that the jury reasonably *could have* concluded from all of the testimony described above that Andrew was running, however innocent his motive might have been, and that his conduct was perceived by Clark to have supported probable cause to detain him. Moreover, though Clark did not independently recall seeing Andrew that night, the jury could have reasonably inferred that Clark witnessed the above-described behavior based on his communication to Echenique that Andrew was "running through the midway causing disorderly conduct." (Dkt. 453 at 172:10–173:6, 178:8–11; Dkt. 439-14) Thus, viewed in the light most favorable to Clark, there was sufficient evidence from which the jury could have found that Clark had probable

cause to seize Andrew.

Plaintiff cites to the Eleventh Circuit's opinion in Joseph v. Chronister, 2021 WL 4739608 (11th Cir. 2021), explaining that Andrew was not committing a crime or breaking any rule at the time of his seizure. (Dkt. 443 at 15–16) However, at the summary judgment stage, both this Court and the Eleventh Circuit were required to *construe all disputed facts in the light most favorable to Plaintiff*. (Dkt. 283 at 39–41) Under Plaintiff's best version of the facts, all Andrew did was pick up a hat and return it to his friend. (Id.) However, at trial, the jury was free to consider *all* of the evidence in determining whether probable cause existed to arrest Andrew: specifically, the evidence about the chaotic and crowded conditions on the Midway that night, the evidence that Andrew ran over to the officers engaged in an arrest of other fairgoers, the evidence from the officers and Defendant's expert witness that such behavior would have been disruptive to the orderly conduct of the Fair, and the evidence—through his communication to Echenique—that Clark witnessed Andrew's conduct.

Most importantly, it was Plaintiff's burden to prove the absence of probable cause to arrest Andrew. Apparently, with the conflicting evidence, the jury concluded that Plaintiff failed to meet this burden.[4] Based on the evidence and the standard of review by which the Court is constrained, the Court cannot find that it was unreasonable for the jury to determine that Plaintiff did not prove Clark lacked

---

[4] Notably, had it been the Defendant's burden to prove the *presence* of probable cause, the jury could just as easily have determined this issue against the Defendant if the jury concluded that the conflicting evidence was insufficient to establish what happened that caused Clark to detain Andrew.

probable cause to seize Andrew on the Midway. Accordingly, Plaintiff's Motion for Judgment as a Matter of Law is **DENIED**.

Plaintiff requests that if the Court grants his Motion for Judgment as a Matter of Law, then it should order a new trial so that the jury can decide the remaining issues on his Section 1983 claim, including whether Clark's violation of Andrew's Fourth Amendment rights proximately caused Andrew's death and whether Joseph is entitled to compensatory and punitive damages. (Dkt. 443 at 16–17) Because the Court finds that sufficient evidence supports the jury's verdict, no new trial is warranted. Accordingly, Plaintiff's request for a new trial is also **DENIED**.

### IV.   CONCLUSION

Upon consideration of the foregoing, the Court hereby **ORDERS** that Plaintiff's Motion for Judgment as a Matter of Law and Motion for a New Trial, (Dkt. 443), is **DENIED**. The Clerk is directed to enter Judgment in favor of Clark consistent with the jury's verdict and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of February 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Any pro se party